UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

|  |  |
|---|---|
|  | Case No. 17-49638-mar |
| PLASCO TOOLING & ENGINEERING | Chapter 11 |
| CORPORATION, | Hon. Mark A. Randon |
|   Debtor |  |

_____/

**DEBTOR'S CORRECTED COMBINED**
**PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT**

**PREPARED BY**:

WERNETTE HEILMAN PLLC
Ryan D. Heilman (P63952)
Michael R. Wernette (P55659)
Attorneys for Debtor
24725 W. 12 Mile Rd., Suite 110
Southfield, MI 48034
(248) 663-5146
ryan@wernetteheilman.com


     THE PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF DEBTOR'S PLAN.  ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PLAN AND THE DISCLOSURE STATEMENT ARE NOT INTENDED TO BE AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN. NOR SHOULD THE INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT BE RELIED ON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.

     *DEBTOR WILL REMOVE THE ABOVE STATEMENT AFTER APPROVAL OF THE DISCLOSURE STATEMENT AND BEFORE DISSEMINATION TO CREDITORS.*

     DEBTOR EXPRESSLY RESERVES ITS RIGHT TO AMEND THIS PLAN AND THE DISCLOSURE STATEMENT.

1

**DEBTOR'S CHAPTER 11 PLAN**

**ARTICLE I**
**DEFINITIONS, RULES OF**
**INTERPRETATION AND COMPUTATION OF TIME**

1.1    **Scope of Definitions.**

      For purposes of this Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined have the meanings given them in section 1.2 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Disclosure Statement, the Bankruptcy Code, or the Bankruptcy Rules, will have the meaning given that term in the Disclosure Statement, the Bankruptcy Code, or the Bankruptcy Rules.

1.2    **Definitions.**

      1.2.1   "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of Debtor, including wages, salaries, commissions for services rendered after the Petition Date, Professional Claims, all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, taxes accruing after the Petition Date, whether or not the last payment date is before or after the Confirmation Date, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c) of the Bankruptcy Code, provided, however, that this term does not include any portion of Allowed Secured Claims, whether or not all or part of Allowed Secured Claim is entitled to priority under sections 503(b), 507, 363, or 364 of the Bankruptcy Code or otherwise.

      1.2.2   "**Administrative Claims Bar Date**" means the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be 60 days after the Effective Date.

      1.2.3   "**Affiliates**" has the meaning given it by section 101(2) of the Bankruptcy Code.

      1.2.4   "**Allowed**" means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in the Class

      1.2.5   "**Allowed Claim**" means a Claim or any portion of the Claim,

      a.     that has been Allowed by a Final Order of the Bankruptcy Court (or such other court or forum with jurisdiction to adjudicate the Claim and objections to it);

      b.     as to which a Proof of Claim has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, but only to the extent that the Claim is identified in the Proof of Claim in a liquidated and noncontingent amount, and either (i) no objection to its allowance has been Filed within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied or overruled by a Final Order;

2

c.      as to which no Proof of Claim has been Filed with the Bankruptcy Court and (i) which is Scheduled as liquidated in an amount other than zero and not contingent or disputed, but solely to the extent of the liquidated amount and (ii) no objection to its allowance has been Filed by Debtor, within the periods of limitation fixed by this Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court; or

d.      that is expressly Allowed in a liquidated amount in this Plan.

1.2.6   "**Allowed Class . . . Claim**" or "**Allowed Class ... Interest**" means an Allowed Claim or an Allowed Interest in the specified Class.

1.2.7   "**Allowed Interest**" means an ownership Interest in Debtor, which has been or is later listed by Debtor in its books and records as liquidated in an amount and not disputed or contingent; provided, however, that to the extent an Interest is a Disputed Interest, the determination of whether the Interest will be Allowed and/or the amount of any Interest will be determined in the manner in which the Interest would have been determined if the Chapter 11 Case had not been commenced; and provided further, however, that proofs of Interest need not be Filed in the Bankruptcy Court with respect to any Interests; and provided further, however, that Debtor, in its discretion, may bring an objection or motion with respect to a Disputed Interest before the Bankruptcy Court for resolution.

1.2.8   "**Avoidance Claims**" means Causes of Action or defenses arising under any of sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute the Causes of Action, including, but not limited to, any claims against John Zuccarini and any other Affiliates and Insiders.

1.2.9   "**Ballot**" means each of the ballot forms that is distributed with the Disclosure Statement to Holders of Claims and Interests included in Classes that are Impaired under this Plan and entitled to vote under the terms of this Plan.

1.2.10  "**Bank**" means First State Bank, the Debtor's primary secured lender.

1.2.11  "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date.

1.2.12  "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District Michigan, or such other court that may have jurisdiction over the Chapter 11 Case.

1.2.13  "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings in the Chapter 11 Case, and the Local Rules of the Bankruptcy Court.

1.2.14  "**Bar Date**" means the deadlines set, or to be set, by the Bankruptcy Court for filing proofs of claim in the Chapter 11 Case.

1.2.15  "**Beneficiaries**" means all Creditors of the Debtor with Claims treated under Articles II or III of this Plan.

1.2.16  "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Detroit, Michigan.

1.2.17  "**Cash**" means legal tender of the United States of America and equivalents thereof.

1.2.18  "**Causes of Action**" means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by Debtor to the extent the Cause of Action is a Cause of Action held by Debtor, including, but not limited to, any claims against John Zuccarini and any other Affiliates and Insiders.

1.2.19  "**Chapter 11 Case**" or "**Case**" means this chapter 11 case number 17-49638-mar, currently pending in the United States Bankruptcy Court for the Eastern District of Michigan.

1.2.20  "**Claim**" means a claim against Debtor, whether or not asserted, as defined in § 101(5) of the Bankruptcy Code.

1.2.21  "**Class**" means a category of Holders of Claims or Interests as described in Article III of this Plan.

1.2.22  "**Committee**" means the the Official Unsecured Creditors Committee of Plasco Tooling and Engineering Corporation.

1.2.23  "**Confirmation**" means the entry of a Confirmation Order on the docket of the Chapter 11 Case.

1.2.24  "**Confirmation Date**" means the date of entry of the Confirmation Order.

1.2.25  "**Confirmation Hearing**" means the hearing before the Bankruptcy Court held under section 1128 of the Bankruptcy Code to consider Confirmation of this Plan and related matters, as may be adjourned or continued from time to time.

1.2.26  "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.27  "**Creditor**" means any creditor of Debtor as defined in section 101(10) of the Bankruptcy Code.

1.2.28  "**DCC Fund**" means a segregated account held by the Debtor in the amount of $57,839.97 constituting proceeds of the Sale in which First State Bank asserts a first priority security interest and as to which Direct Capital Corporation asserts that the account constitutes the proceeds of the sale of its property previously held by the Debtor under a lease or, in the alternative, asserts a first priority security interest.

4

1.2.29 "**Debtor**" means Plasco Tooling and Engineering Corporation, and, after the Effective Date, the Reorganized Debtor.

1.2.30 "**Disallowed Claim**" means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

1.2.31 "**Disclosure Statement**" means the written disclosure statement (including all attached and referenced schedules) that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

1.2.32 "**Disputed Claim**" or "**Disputed Interest**" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest.

1.2.33 "**Effective Date**" means the first day of the first full month after the Confirmation Date has occurred.

1.2.34 "**Entity**" has the meaning set forth at section 101(15) of the Bankruptcy Code.

1.2.35 "**Estate**" means the bankruptcy estate of Debtor created pursuant to section 541 of the Bankruptcy Code.

1.2.36 "**Exhibit**" means any exhibit or schedule attached to this Plan, the Disclosure Statement, or incorporated into either by reference, including any amendments and supplemental exhibits or schedules that may be filed subsequent to filing of the Plan and Disclosure Statement.

1.2.37 "**File**" means to file with the Bankruptcy Court in the Chapter 11 Case or such other court with jurisdiction over the relevant subject matter.

1.2.38 "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.2.39 "**Final Order**" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely Filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was

5

sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

1.2.40 "**General Unsecured Claim**" means any Claim that is not otherwise an Administrative Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

1.2.41 "**General Unsecured Claim Payment**" means the payment, if Reorganized Debtor has sufficient funds, to be made to Holders of General Unsecured Claims as set forth in section 3.5.

1.2.42 "**Governmental Unit**" has the meaning set forth at section 101(27) of the Bankruptcy Code.

1.2.43 "**Holder**" means a Person holding a Claim, Interest, or Lien.

1.2.44 "**Holdback Proceeds**" means $241,994.77 currently held by Purchaser pending a determination of the value of eligible account receivables under the Asset Purchase Agreement. Under the terms of the Asset Purchase Agreement, the Purchaser will release the Holdback Proceeds to the extent of the value of eligible account receivables transferred by the Debtor that are reasonably certain of collection, if any.

1.2.45 "**Impaired**" refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.2.46 "**Insider**" has the meaning set forth at section 101(31) of the Bankruptcy Code.

1.2.47 "**Insider Claim**" means a Claim held by an Insider.

1.2.48 "**Interest**" means the legal, equitable, contractual, and other rights of any Person with respect to equity securities of, or ownership interests in Debtor.

1.2.49 "**Interest Rate**" except as otherwise provided in the Plan, means (a) with respect to a claim for taxes, the interest rate applicable under non-bankruptcy law, (b) for all other Claims entitled to interest under the Bankruptcy Code and this Plan, the prime rate of interest published in the Wall Street Journal on the Confirmation Date (or, if no prime rate of interest is published on the Confirmation Date, the most recent prime rate of interest published in the Wall Street Journal prior to the Confirmation Date) plus one and one half percent (1.25%), or (c) such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.2.50 "**IRC**" means the Internal Revenue Code of 1986, as amended.

1.2.51 "**IRS**" means the Internal Revenue Service.

1.2.52 "**Lien**" has the meaning set forth at section 101(37) of the Bankruptcy Code.

1.2.53 "**Liquidation Plan Committee**" means the committee to be formed under section 4.1.2.

1.2.54 "**Person**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust,

estate, unincorporated organization, Governmental Unit, or other Entity.

1.2.55 "**Petition Date**" means June 29, 2017, the date Debtor Filed its petition for relief in the Bankruptcy Court.

1.2.56 "**Plan**" means this plan for the resolution of outstanding Claims and Interests in the Chapter 11 Case, including all Exhibits, supplements, appendices, and schedules, either in its present form or as it may be altered, amended, or modified in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.2.57 "**Priority Claim**" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code.

1.2.58 "**Priority Tax Claim**" means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.2.59 "**Proof of Claim**" means a proof of Claim Filed against Debtor in the Chapter 11 Case.

1.2.60 "**Pro Rata**" means (a) with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise and (b) with respect to Interests, at any time, the proportion that the number of Interests held by an Interest Holder in a particular Class or Classes bears to the aggregate number of all Interests (including Disputed Interests, but excluding Disallowed Interests) in such Class or Classes.

1.2.61 "**Professional**" means any Person retained in the Chapter 11 Case by Bankruptcy Court order pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise.

1.2.62 "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and before and including the Effective Date.

1.2.63 "**Purchaser**" means PTEC Holdings, Inc., the successful purchaser at the Sale, and any successors and assigns.

1.2.64 "**Reorganized Debtor**" means Debtor from and after the Effective Date.

1.2.65 "**Retained Actions**" means all Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, Claims and Causes of Action brought before the Effective Date or identified in the Schedules or Disclosure Statement, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court before the date of this Plan.

1.2.66 "**Sale**" means the sale of substantially all Debtor's assets as approved by the Bankruptcy Court on September 12, 2017 [DN 133].

1.2.67 "**SBA**" means the U.S. Small Business Association, a secured creditor.

1.2.68 "**SBA Fund**" means a segregated account held by the Debtor in the amount of $339,408.24 constituting proceeds of the Sale in which either First State Bank or the SBA holds a first position priority security interest.

1.2.69 "**Scheduled**" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

1.2.70 "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed in the Chapter 11 Case by Debtor.

1.2.71 "**Secured Claim**" means a Claim secured by a security interest in or a lien on property in which Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or as otherwise agreed upon in writing by Debtor and the Holder of such Claim.

1.2.72 "**Security**" has the meaning set forth at section 101(49) of the Bankruptcy Code.

1.2.73 "**Unimpaired**" means, with respect to a Claim, any Claim that is not Impaired.

1.2.74 "**Voting Deadline**" means the deadline set for the receipt of Ballots by Debtor or Debtor's agent as set by the Bankruptcy Court.

1.3 **Rules Of Interpretation:** For purposes of this Plan, unless otherwise provided herein:

1.3.1 Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, include, both the singular and the plural.

1.3.2 Each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter.

1.3.3 Any reference in this Plan to an existing document or schedule Filed or to be Filed means the document or schedule, as it may have been or may be amended, modified, or supplemented. Except as otherwise ordered by the Bankruptcy Court, all Exhibits, as amended, modified or supplemented, are incorporated by reference into this Plan and Disclosure Statement for all purposes.

1.3.4 Any reference to an Entity or Person as a Holder of a Claim or Interest includes that Entity's or Person's successors and assigns. Any reference to Debtor includes the Reorganized Debtor for all periods after the Effective Date.

8

1.3.5    Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially on such terms and conditions.

1.3.6    The words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan.

1.3.8    Subject to the provisions of any contract, certificates of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. To the extent that reference to state law is required, the Plan is governed by the substantive law of Michigan.

1.3.9    The rules of construction in section 102 of the Bankruptcy Code apply. The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or ambiguous. However, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

1.4    **Computation of Time.**  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 apply. Whenever any action is required to be performed or deadline expires on a specific date, if the date falls on a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006), the action may be performed, or the deadline will expire, on the next day that is not a Saturday, Sunday, or legal holiday.

1.5    **References to Monetary Figures**.   All references in this Plan to monetary figures refer to currency of the United States of America.

1.6    **Exhibits**.  All Exhibits are incorporated into and are a part of this Plan and Disclosure Statement as if set forth in full herein and, to the extent not attached to this Plan, the Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from Debtor's counsel. **All Exhibits may be revised before the Confirmation Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan.**  The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court will constitute an approval of the Exhibits.

1.7    **No Admissions; Estimates of Claims**.  Unless expressly stated otherwise, nothing herein will be deemed to be an admission by Debtor or to otherwise prejudice Debtor in any claims objection or Cause of Action. All estimates of Causes of Action and Claim amounts listed in this Plan, the Disclosure Statement, and Exhibits are current estimates only. All Claims amounts and classifications remain subject to the Claims Objection process as set forth in Article XII.

**ARTICLE II
CLAIMANTS THAT ARE NOT SUBJECT TO**

**CLASSIFICATION AND ARE NOT ENTITLED TO VOTE ON THE PLAN**
**ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS**

2.1 **Administrative Claims**.

Subject to the provisions of this Plan and upon occurrence of the Effective Date, as soon as possible after an Administrative Claim becomes an Allowed Administrative Claim or the date when an Administrative Claim becomes payable pursuant to any agreement between Debtor and the Holder of the Administrative Claim (but, in no event later than ten days thereafter), a Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim or such other treatment that Debtor and the Holder of the Allowed Administrative Claim shall have agreed upon in writing.

2.2 **Priority Tax Claims**.

2.2.1 The Holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of its Allowed Priority Tax Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, payment of the outstanding amount of the Allowed Priority Tax Claim in equal monthly installments commencing on the date that is 60 days after the Effective Date, with interest accruing at the Interest Rate, calculated so that the last monthly payment will occur on or before June 29, 2022, the fifth anniversary of the Petition Date. Debtor may pre-pay any Priority Tax Claim payment. For the avoidance of doubt, all taxes of the type entitled to priority under 11 U.S.C. section 507(a) that have been assessed prior to the Petition Date are subject to this section 2.2. To the extent Debtor lacks funds to make any payment required under this Section with respect to trust fund taxes, John Zuccarini will be responsible for making the payment on the Debtor's behalf.

2.2.2 Debtor reserves the right to continue or commence a challenge as to any Priority Tax Claim through the claims objection process set forth in Article XII of this Plan or through any appropriate adjudicative body with necessary jurisdiction, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims includes, without limitation, an objection to the assessment of Debtor's real or personal property that may or may not have been made by the respective taxing authority.

2.3 **Professional Claims**.

2.3.1 **Final Fee Applications**. All final requests for payment of Professional Claims must be Filed no later than sixty days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims and expenses will be determined by the Bankruptcy Court and paid by Debtor within three (3) Business Days after they are Allowed, unless otherwise agreed to in writing by Debtor and the Professional.

2.3.2 **Post-Confirmation Date Retention**. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date or to make any

disclosures pursuant to Bankruptcy Rules 2014 and 2016 will terminate, and Debtor shall employ and pay Professionals in the ordinary course of business.

2.4 **Substantial Contribution Compensation and Expenses Bar Date.** Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application with the clerk of the Bankruptcy Court on or before the Administrative Claims Filing Date and serve such application on counsel for Debtor and other parties as may be directed by the Bankruptcy Court on or before such date, or be forever barred from seeking such compensation or expense reimbursement. The Court will determine any timely filed request for compensation or expense reimbursement made under this <u>section 2.4</u>, and Debtor shall pay any Allowed amount within sixty days of entry of a Final Order.

2.5 **Other Administrative Claims**. All other requests for payment of an Administrative Claim (other than as set forth in section 2.4 of this Plan) must be Filed and served on Debtor's counsel by the Administrative Claims Filing Date, except that any Administrative Claim not already Filed and required to have been Filed before a Bar Date is automatically disallowed. Any request for payment of an Administrative Claim pursuant to this <u>section 2.5</u> that is not timely Filed and served is automatically disallowed without the need for any objection by Debtor. After the Effective Date, Debtor may settle an Administrative Claim without further Bankruptcy Court approval. Unless Debtor objects to an Administrative Claim within 60 days after the Administrative Claims Bar Date (unless such objection period is extended by the Bankruptcy Court), the Administrative Claim will be deemed Allowed in the amount requested. In the event that Debtor objects to an Administrative Claim, the Bankruptcy Court will determine the Allowed amount of the Administrative Claim.

2.6 **Administrative Expense Claims of Insiders.** John Zuccarini claims that Debtor owes certain administrative expenses to him for salary payments deferred before the Sale, and that Debtor owes certain administrative expenses to the John Zuccarini Living Trust for rent accrued but not paid during the Chapter 11 Case. These Administrative Expense claims, if Allowed, shall be subordinated to payment of all other Administrative Expense Claims and Priority Claims, and payment shall be deferred until the General Unsecured Claims Payment is paid.

**ARTICLE III**

**SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS**
<u>**NOT IMPAIRED UNDER THE PLAN AND THOSE IMPAIRED UNDER THE PLAN**</u>

The Plan divides Claims and Interests into six (6) Classes and treats them as follows:

3.1 **Class I**: Class I consists of Bank's Secured Claims arising before the Petition Date.

3.1.1. As of the Petition Date, the Bank held Secured Claims for four loans in the aggregate amount of $2,899,271. In addition, the Bank asserts additional amounts owed for interest and fees accruing both before and after the Petition Date. After the Petition Date, the Bank has been paid $2,270,306.39 from liquidation of its collateral, leaving a balance of $628,964.13 plus applicable pre-Petition Date fees and accrued interest. Reorganized Debtor is authorized to negotiate an appropriate amount for such fees and accrued interest and, in the absence of an agreement, either Reorganized Debtor or Bank may request that a determination be made by the Court.

11

3.1.2.   The remainder of Bank's Secured Claims will be paid out of the remaining proceeds of the Bank's collateral, i.e. the Holdback Proceeds, and, to the extent that Bank is found to have a first position security interest, the SBA Account and the DCC Account.

3.1.3.   To the extent that the remaining proceeds of the Bank's collateral is insufficient to pay the Bank's Secured Claims, the remaining unpaid amount of the Bank's Claims will be general unsecured claims and entitled to a distribution under Section 3.5.1.

3.1.4.   **This Class is Impaired**.

3.2   **Class II:**  Class II consists of the Allowed Secured Claim of the SBA.

3.2.1   The SBA holds a Secured Claim in the amount of $339,408.24 secured by the SBA Account.

3.2.2   To the extent that the SBA is determined to have a first priority security interest in the SBA Account, the SBA will be paid that amount from the SBA Account.

3.2.3   To the extent that the SBA is determined to not have a first priority security interest in the SBA Account, the SBA's Claim will be a general unsecured claim and entitled to a distribution under Section 3.5.1.

3.2.4   **This Class is Impaired**.

3.3   **Class III:**  Class III consists of the Allowed Secured Claim of Direct Capital Corporation.

3.3.1   Direct Capital Corporation asserts a Secured Claim in the amount of $57,839.97 secured by the DCC Account.

3.3.2   To the extent that Direct Capital Corporation is determined to have a first priority security interest in the DCC Account, Direct Capital Corporation will be paid that amount from the DCC Account.

3.3.3   To the extent that Direct Capital Corporation is determined to not have a first priority security interest in the DCC Account, Direct Capital Corporation's Claim will be a general unsecured claim and entitled to a distribution under Section 3.5.1.

3.3.4   Notwithstanding anything to the contrary herein, the claims in this class are subject to Article 12 of this Plan.

3.3.5   **This Class is Impaired**.

3.4   **Class IV:**        This Class consists of the Secured Claims of the Macomb County Treasurer.

3.4.1   The Macomb County Treasurer asserts a Secured Claim in the amount of $6,303.63 for personal property taxes.

3.4.2   Debtor will pay the Macomb County Treasurer its Allowed Secured Claim, in full and final satisfaction of all Claims asserted by the Macomb County Treasurer, within 60 days

after the Effective Date unless, if an objection is filed to the Macomb County Treasurer's Claim within such 60-day period, within fourteen days after entry of a Final Order allowing the Claim.

### 3.4.3 **This Class is Impaired.**

3.5 **Class V:** This Class consists of all Allowed General Unsecured Claims.

     3.5.1    Holders of Class V Claims will be paid a Pro Rata share of the General Unsecured Claims Payment. The amount of the General Unsecured Claims Payment shall be the proceeds of all Debtor's assets, including all Causes of Action, after payment of all Secured, Administrative, and Priority Claims. Debtor makes no guaranty or representation that there will be sufficient funds to make a General Unsecured Claims Payment.

### 3.5.2 **This Class is Impaired.**

3.6 **Class VI**: This Class consists of the Claims of Interests.

     3.6.1    The Interests of this Class shall be deemed canceled and the Interests of the Reorganized Debtor will be reissued to the Liquidating Plan Committee to be held for the benefit of all Beneficiaries in accordance with this Plan. Such interests shall entitle the Liquidating Plan Committee to all of the rights and powers granted to equity interest holders of a corporation pursuant to applicable Michigan law.

### 3.6.2 **This Class will be Impaired.**

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

### 4.1 **Post-petition Governance of Reorganized Debtor**

     4.1.1   **Officers of the Reorganized Debtor.** Upon the Effective Date, Debtor will become the Reorganized Debtor. Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor shall continue any activities necessary for the winding up Debtor's affairs, and shall collect all revenues and income, and shall distribute such revenues and income as provided under the terms of this Plan. Reorganized Debtor shall retain John Zuccarini as its President and Tony Lasala as Vice President, with specified duties and upon terms acceptable to the Liquidating Plan Committee. The Reorganized Debtor may retain other employees at commercially reasonable rates of compensation upon terms acceptable to the Liquidating Plan Committee and subject to all other terms herein. The Reorganized Debtor shall continue to produce monthly operating reports in form and manner consistent with the Debtor's filing of such reports during the pendency of the Bankruptcy Case.

     4.1.2   **Liquidating Plan Committee Formation.** Upon the Effective Date, the Liquidating Plan Committee shall be deemed formed, consisting of such members of the Committee that elect to continue as members of the Liquidating Plan Committee.

     4.1.3   **Powers of Liquidating Plan Committee.** The Liquidating Plan Committee shall have power to investigate and prosecute all lawsuits, claim objections, settlements, payments, expenses, distributions and other matters for the benefit of the Beneficiaries. The Liquidating Plan Committee may, in its sole discretion, delegate limited authorizations to the President and Vice-President of the Reorganized Debtor to take any actions as it deems necessary. The Liquidating Plan Committee shall also appoint a Chief Liquidating Officer to assist

13

the Liquidating Plan Committee in carrying out its responsibilities under this Plan. The Liquidating Plan Committee hereby appoints, as of the Effective Date, William Beck as the initially appointed Chief Liquidating Officer and sole board member of the Reorganized Debtor to serve at the pleasure of and to assist the Liquidating Plan Committee pursuant to this Plan. The Liquidating Plan Committee shall retain the services of Varnum, LLP and any other professionals of its choosing to assist, advise, and represent the Liquidating Plan Committee and any Chief Liquidating Officer.  The Liquidating Plan Committee shall file a monthly report with respect to is activities, including the status of (a) any investigations and prosecutions of any lawsuits, claim objections, (b) any pending settlements, (c) payments, (d) expenses, (d) distributions and (e) any other activities undertaken by the Liquidating Plan Committee on behalf of the Reorganized Debtor for the benefit of the Beneficiaries.

4.1.4    **Removal.** Officers of the Reorganized Debtor and each member of the Liquidating Plan Committee will serve until (i) the Reorganized Debtor's affairs have been fully wound down and all assets have been fully administered, (ii) they voluntarily resign, or (iii) they are removed for cause by the Bankruptcy Court upon motion by the Liquidating Plan Committee. Cause for removal will include material (a) breach of fiduciary duties owed to the bankruptcy estate or Beneficiaries, (b) fraud, (c) failure to comply with the provisions of this Plan, (d) misuse of funds, and with respect to officers of the Reorganized Debtor, (e) mismanagement, and (f) actions on behalf of the bankruptcy estate without proper authorization under this Plan, the Liquidating Plan Committee, or the Court. The Liquidating Plan Committee may bring a motion to remove and/or replace officers of the Reorganized Debtor for cause at any time, and may seek expedited and/or injunctive relief if the circumstances warrant.

4.1.5    **Optional By-laws.** The Committee, subject to confirmation of this Plan, or the Liquidating Plan Committee after the Effective Date, may, in its discretion, amend the Company's existing by-laws to conform with the provisions of this Plan, which amendments may be filed by the Committee as Exhibit 4.1.5 to this Plan on or prior to the Confirmation Date.

4.1.6    **Conflicts.** John Zuccarini, Tony Lasala and other insiders of the Debtor shall take no part in investigations, decisions, and actions involving actions or possible actions against any insider of the Debtor, including, but not limited to Causes of Action against insiders and objections to claims filed by insiders. Additionally, John Zuccarini and Tony Lasala shall take no part in investigations, decisions, and actions involving actions or possible actions against the Purchaser except with respect to the Holdback Proceeds. Each member of the Liquidating Plan Committee shall take no part in investigations, decisions, and actions involving actions or possible actions against that member. Nothing in this section shall be construed as limiting or prejudicing the rights of any insider or Liquidating Plan Committee member to assert their rights or defend themselves, but estate resources may not be used for such assertion of rights or defense.

4.2    **Assumption of Liability**:

4.2.1    Debtor and Reorganized Debtor shall be responsible for satisfying the Allowed Claims in accordance with the terms and provisions of this Plan.

4.2.2    The Reorganized Debtor will retain control of and be responsible for all of Debtor's activities pursuant to this Plan after the Effective Date. Funding for the administration of the bankruptcy estate and of this Plan and for the actions necessary for the legal wind down of the Debtor shall come from funds on hand and the proceeds of the liquidation of Debtor's remaining assets.

14

4.2.3    The Reorganized Debtor may pre-pay any Allowed Claim, other than Allowed Claims held by Insiders or Affiliates, at any time without penalty or liability for unmatured interest. The Reorganized Debtor may negotiate discounts in exchange for pre-payments. Upon payment by the Reorganized Debtor to any Allowed Claim Holder in the amounts required under this Plan or as otherwise agreed by the Allowed Claim Holder, the Reorganized Debtor will have no further obligation to the Allowed Claim Holder under this Plan, and the Allowed Claim Holder will have no further or continued rights or standing under this Plan.

4.2.4    Upon full administration of all assets, distribution of all proceeds and satisfaction of all obligations under this Plan, the Reorganized Debtor will be dissolved. Nothing in this Section will be construed as waiving or limiting the Reorganized Debtor's rights and interests under this Plan, to enforce those rights and interests through the Bankruptcy Court, to dispute claims, to bring motions or pursue Causes of Action in the Bankruptcy Court or any other court, or to petition the Bankruptcy Court for the redress of any grievances.

4.3    **Post-Confirmation Professionals**:

4.3.1    **Retention.** The Reorganized Debtor and the Liquidating Plan Committee may retain professionals after the Effective Date to represent, assist, the Reorganized Debtor and Liquidating Plan Committee in all aspects of their obligations and rights under this Plan. Without limitation, the Reorganized Debtor and Liquidating Plan Committee may retain professionals employed by the Debtor and Committee in the Chapter 11 Case, except that professionals employed by the Debtor shall take no part in investigations, decisions, and actions involving actions or possible actions against any insider of the Debtor, and professionals employed by the Committee shall take no part in investigations, decisions, and actions involving actions or possible actions against any member of the Committee.

4.3.2    **Professional Fees.** Any services performed or expenses incurred by any Professional on behalf of the Reorganized Debtor or the Liquidating Plan Committee with respect to the Chapter 11 Case after the Confirmation Date, will be Administrative Claims, will be paid by Reorganized Debtor and will not be subject to the prior review and approval of the Bankruptcy Court, after twenty (20) notice to the Liquidating Plan Committee, the Reorganized Debtor, and John Zuccarini. Notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Bankruptcy Rule 2016, after the Confirmation Date, no Professional will be required to disclose payments from Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses of Reorganized Debtor shall be billed directly to Reorganized Debtor and the Bankruptcy Court shall review only that portion to which Reorganized Debtor, the Liquidating Plan Committee, or John Zuccarini objects. Reorganized Debtor must pay the portion not objected to in accordance with the terms of the invoice.

4.4    **Effectuating Documents**:  John Zuccarini, as President of Reorganized Debtor, with notice to and consent of the Liquidating Plan Committee, subject to the other terms of this Plan, shall be authorized as of the Effective Date to execute, deliver, file, or record such financing statements, contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate on behalf of Reorganized Debtor to effectuate and further evidence the terms and conditions of this Plan without further notice to or order, action or approval of the Bankruptcy Court.

4.5    **The DCC and SBA Accounts.** Notwithstanding anything in this Plan to the contrary, nothing in this Plan is intended to resolve any disputes regarding the rights to the Sale proceeds held in DCC Account and the SBA Account. The rights to these proceeds will be

resolved either through a negotiated resolution and stipulation of the affected parties or by the Bankruptcy Court after appropriate notice and proceedings.

### 4.6 **Preservation of Rights of Action**:

4.6.1 **Vesting of Causes of Action:** In accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action of Debtor and Debtor's Estate will be transferred to the Reorganized Debtor. The Reorganized Debtor shall retain and may (but is not required to) enforce all rights to commence, pursue, compromise and collect, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to, Avoidance Claims and any actions specifically listed in the Disclosure Statement.

4.6.2 **All Causes of Action are Specifically Reserved, whether or not specifically listed in the Plan or Disclosure Statement:** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, Exhibit, or a Final Order, Debtor specifically reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, res judicata, estoppel (judicial, equitable or otherwise) or laches will apply to any of the Causes of Action upon, after or as a consequence of the Confirmation, entry of the Confirmation Order, or the Effective Date.

### ARTICLE V
### EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

5.1 **Settlement of Indebtedness**: Except as otherwise provided in this Plan, the confirmation of this Plan will, and does hereby act as a full, total and complete settlement and judgment with respect to all Claims of all Creditors against Debtor and the Reorganized Debtor. Confirmation will also act as an injunction against all Creditors from taking any actions to collect or enforce Claims against Debtor or Reorganized Debtor except as set forth in this Plan. The forgoing notwithstanding, the Debtor is not entitled to a discharge under 11 U.S.C. § 541(d)(3) and this paragraph will not affect the rights of any taxing authority against any other entity or person who may be liable or responsible for the taxes of the Reorganized Debtor.

5.2 **Subordinated Claims**. The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and confirm the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, Debtor reserves the right to re-classify (or request that the Bankruptcy Court re-classify) any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto. If a Claim is Allowed but subordinated, the Claim will not be entitled to payment under this Plan until all other Claims have been paid in full or as otherwise specified by this Plan or the Bankruptcy Court.

5.3 **Injunction**. Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold Claims or Interests that are treated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against Debtor or its property on account of any such discharged Claims, debts, liabilities, or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any

16

Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply, or is consistent, with the provisions of this Plan.

5.4 **Protections against Discriminatory Treatment**. Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons, including Governmental Units, shall not discriminate against Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, Debtor, or other Person with whom Debtor has been associated, solely because Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

5.5 **Release of Liens**. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Articles II and III of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate will be deemed fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests will revert to Debtor and its successors and assigns.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTION

6.1 **No Interest On Unsecured Claims**. Unless otherwise specifically provided for in this Plan or as otherwise required by section 506(b) of the Bankruptcy Code, interest will not accrue or be paid on any General Unsecured Claim.

6.2 **Delivery Of Distributions in General**. Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests will be made by Reorganized Debtor (a) at the addresses set forth on the Proofs of Claim Filed by the Holders of Claims or Interests (or at the last known addresses of such Holders of Claims or Interests if no Proof of Claim is Filed or if Debtor has been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to Debtor after the date of any related Proof of Claim, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and Debtor has not received a written notice of a change of address. Distributions under the Plan on account of Allowed Claims will not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim will have and receive the benefit of the distributions in the manner set forth in the Plan.

6.3 **Undeliverable Distributions and Non-Negotiated Checks.** If any distribution to a Holder of a Claim or Interest is returned as undeliverable, no further distributions to such Holder of such Claim or Interest will be made unless and until Debtor is notified of the then-current address of such Holder of the Claim, at which time all missed distributions will be made to the Holder of the Claim without interest. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within one hundred and twenty days after the issuance of the check, the check will be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks will be held by the Reorganized Debtor until the earlier of (i) such distributions are claimed by the valid Holder of the Claim or (ii) ninety days after the check is

returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts will revert to the Reorganized Debtor free of any restrictions and the Claim of any Holder or successor to such Holder with respect to the distribution will be deemed discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. Nothing contained herein requires the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

      6.4    **Fractional Payments.** Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars are not required. Payment of fractions of dollars that would otherwise be distributed under the Plan will be rounded to the lower whole number of dollars.

      6.5    **Restrictions on Distributions.** Notwithstanding anything in this Plan to the contrary, Debtor is not required to make any distribution to a Claim Holder in an amount less than $10.00.

## ARTICLE VII
## MODIFICATION OF THE PLAN

      7.1    **Modification of Plan**. Except as otherwise provided in this Plan, Debtor may, from time to time, propose amendments or modifications to this Plan prior to the Confirmation Date, without leave of the Bankruptcy Court. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modification set forth in the Plan, Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend or materially modify the Plan, one or more times before the Confirmation Date. After the Confirmation Date, Reorganized Debtor or Liquidating Plan Committee may, with leave of the Bankruptcy Court and upon notice and opportunity for hearing to the affected Creditor(s), remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or otherwise modify the Plan.

      7.2    **Effect of Confirmation on Modifications**. Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation of the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

      7.3    **Revocation or Withdrawal of the Plan.** Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If Debtor revokes or withdraws the Plan, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption, assignment, or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, will be deemed null and void; and (3) nothing contained in the Plan will: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action; (ii) prejudice in any manner the right of Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other Person.

## ARTICLE VIII
## JURISDICTION OF THE COURT

      8.1    **Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction

over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction with respect to:

8.1.1    The classification of the Claim of any Creditor and the re-examination of Claims Allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors.  The failure by Debtor to object to, or to examine any Claim for the purposes of voting, will not be deemed to be a waiver of any right to object to, or reexamine the Claim, in whole or in part. Furthermore, the fact that this Plan has provided a treatment for the benefit of a particular Creditor will not in any way be deemed to be a waiver of any right to object to or re-examine the Claim or any secured interest whether by mortgage or otherwise which secures such Claim, in whole or in part.

8.1.2    The determination of all questions and disputes regarding title to the assets of the estate, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between Debtor and any other party.

8.1.3    The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

8.1.4    The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in aid of confirmation of this Plan.

8.1.5    The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtor or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

8.1.6    The review and approval of all Professional Fee applications for services rendered before the Confirmation Date and the review of any Professional Fees for services rendered in connection with the Plan after the Confirmation Date to the extent that Debtor disputes all or a portion thereof.

8.1.7    Debtor's right to pursue any Causes of Action or Avoidance Actions.

8.1.8    The entry of an order determining the validity of any Lien.

8.1.9    The entry of an order concluding and terminating this Case.

8.2    **Standing.**    Plan Beneficiaries have standing to enforce their rights under this Plan or to seek relief in the event that any person or entity fails to comply with their obligations under this Plan.

## ARTICLE IX
## TITLE TO PROPERTY

9.1.    **Revesting of Assets**.  Except as otherwise explicitly provided for in this Plan, on the Effective Date, all property held by the Estate (including all Causes of Action) will vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, encumbrances, right, and Interests of Creditors and equity security Holders. As of and following the Effective Date, the Reorganized Debtor, as provided for under the terms of this Plan, may conduct the Debtor's activities and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

19

9.2. **Effect of Conversion**. In the event of a conversion of this case to a Chapter 7 proceeding, all property of the Debtor or Reorganized Debtor, including property which will revest in the Reorganized Debtor pursuant to Confirmation of this Plan and all property acquired by the Reorganized Debtor subsequent to a plan of confirmation, shall be property of the Chapter 7 estate, subject to the Liens and security interests granted under this Plan.

## ARTICLE X
## UNITED STATES TRUSTEE FEES & REGULATORY COMPLIANCE

10.1 **Payment of U.S. Trustee Fees**. Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) and shall provide the United States Trustee with appropriate reports indicating the cash disbursements for the relevant period until such time as the Chapter 11 Case is administratively closed.

## ARTICLE XI
## EXECUTORY CONTRACTS

11.1 **Rejection of Executory Contracts and Unexpired Leases.** Unless rejected under this Plan or subject to a separate motion to assume or reject filed before the Confirmation Date, all executory contracts and unexpired leases of Debtor shall be deemed rejected. With respect to leases of real or personal property, the rejection shall be deemed to occur at the earlier of (i) the Effective Date or (ii) the date the Debtor surrendered possession of the premises or the personal property that is the subject of the lease.

11.2 **Rejection Claims.** Any Creditor who has a Claim as a result of the rejection of a contract shall have until thirty days after the Effective Date to file a Proof of Claim asserting the rejection damages relating to the contract, failing which such Claim will be disallowed in its entirety. However, if the Creditor has not been served with a copy of this Plan, the Creditor shall have thirty days from receipt of actual notice of Debtor's rejection or assumption of the contract or lease. Creditors whose contracts are assumed or rejected under a Court Order entered before the Effective Date are required to follow the procedures set forth in the Court Order if they differ from the procedures set forth above.

11.3 **Objections to Rejection Claims and Cure Claims.** Reorganized Debtor may file an objection to any Proof of Claim filed in accordance with this Article and in accordance with Article XII.

## ARTICLE XII
## OBJECTIONS TO CLAIMS

12.1. **Timing of Objections:** Reorganized Debtor may object to the allowance of any Claim, whether listed on the Schedules filed by Debtor, or filed by any Creditor, on or before the later of (a) six months from the date of filing of any Proof of Claim or (b) six months after the Effective Date.

12.2 **Objections to Liens:** Reorganized Debtor may object to any Lien or security interest within the time period set forth in Section 12.1 or after any attempt by a Creditor to enforce the Lien, except that Debtor may not file an objection to any Lien that is the basis of a Claim Allowed under the terms of this Plan.

12.3 **Claims Bar Date**: Except as provided herein or otherwise agreed by Debtor in writing, any and all Proofs of Claim filed after the applicable Bar Date shall be deemed disallowed and expunged as of the Effective Date (or, for a Claims Bar Date after the Effective Date, as of the applicable Claims Bar Date) without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions

on account of such Claims, unless on or before the Confirmation Date such late Claim has been held timely Filed by a Final Order.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1 **Immediate Binding Effect**. Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims or Interests failed to vote to accept or reject the Plan, voted to accept or reject the Plan, or is deemed to accept or reject the Plan), and all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan.

13.2 **Additional Documents**. On or before the Effective Date, Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.3 **Reservation of Rights**. Except as expressly set forth in the Plan, the Plan will have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by Debtor with respect to the Plan or the Disclosure Statement shall be, or shall be deemed to be, an admission or waiver of any rights of Debtor with respect to the Holders of Claims or Interests before the Effective Date.

13.4 **Successors and Assigns**. The rights, benefits, and obligations of any Person named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of such Person.

13.5 **Service of Documents.** After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to Debtor, Reorganized Debtor or the Liquidating Plan Committee must be sent by overnight mail, postage prepaid to:

Plasco Tooling and Engineering Corporation
c/o John Zuccarini
31985 Groesbeck Hwy
Fraser, MI 48026

*with a copy to:*

Ryan D. Heilman
**WERNETTE HEILMAN PLLC**
24725 W. 12 Mile Rd., Ste. 110
Southfield, MI 48034

*And*

21

Liquidating Plan Committee
c/o Brendan G. Best
**VARNUM LLP**
160 W. Fort St., 5th Floor
Detroit, MI 48226

13.6 **Entire Agreement.** Except as otherwise stated in this Plan, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan, the Chapter 11 Term Sheet.

13.7 **Nonseverability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without Debtor's consent; and (3) nonseverable and mutually dependent.

13.8 **Closing of Chapter 11 Case**. Debtor shall, after the full administration of the Chapter 11 Case, File with the Bankruptcy Court, all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

13.9 **Waiver or Estoppel**. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with Debtor, the Stipulating Parties, or their counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

13.10 **Conflicts and Interpretation of the Plan**. Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, or any other order (other than the Confirmation Order) referenced in the Plan or any Exhibits, schedules, appendices, supplements, or amendments to any of the foregoing, conflict with or are in any way inconsistent with any provision of the Plan, the Plan will govern and control.

13.11 **Termination of Liens and Encumbrances**. Debtor and all parties-in-interest, including any Creditor, must execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This includes the execution by Creditors of any Uniform Commercial Code termination and mortgage releases and termination.

13.12 **Causes of Action; Standing**. Except as otherwise provided in this Plan, Reorganized Debtor has the right and authority to commence, continue, amend or compromise all Causes of Action available to Reorganized Debtor, the Estate or the debtor-in-possession, including without limitation all Avoidance Claims whether or not those Causes of Action or Avoidance Claims were the subject of a suit as of the Confirmation Date.

22

**DISCLOSURE STATEMENT**

**I.     Introduction and Overview.**

A.     *Purpose of Disclosure Statement.*

All capitalized terms unless the term is defined in this Disclosure Statement have the meaning given in Debtor's Plan of Reorganization (the "Plan").

Debtor submits this Disclosure Statement ("Disclosure Statement") pursuant to § 1125 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, to all known Holders of a Claim against it. Debtor has filed the Plan with the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, a copy of which accompanies this Disclosure Statement.

Debtor provides this Disclosure Statement to its Creditors to disclose information material and necessary for Creditors to make a reasonably informed decision in exercising their right to vote to accept of the Plan.

B.     *Source of Information.*

The Disclosure Statement and the Plan have been prepared from information furnished primarily by Debtor. Debtor's counsel has not conducted an independent investigation to verify this information.

Certain materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are summaries of other documents. While every effort has been made to retain the meaning of these documents or portions of documents that have been summarized, Debtor urges you to thoroughly review the contents of these documents before relying on them. In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of the document will govern.

The statements contained in this Disclosure Statement are made as of its date, unless another time is specified. Neither the delivery of this Disclosure Statement nor any exchange of rights in connection with it will, under any circumstances, create an implication that there has been no change of the facts set forth in this Disclosure Statement since the date it was first filed.

**NO PERSON OR ENTITY HAS BEEN AUTHORIZED BY DEBTOR OR THE COURT TO GIVE ANY INSTRUCTIONS OR MAKE ANY REPRESENTATIONS CONCERNING DEBTOR, DEBTOR'S FINANCIAL AFFAIRS, OR THE VALUE OF ITS PROPERTY, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE PLAN. ANY REPRESENTATIONS, PROMISES OR INDUCEMENTS, PARTICULARLY REGARDING DEBTOR'S PROPERTY OR FUTURE INCOME, MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN, WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. ANY SUCH REPRESENTATION, INDUCEMENTS AND/OR PROMISES SHOULD BE REPORTED TO COUNSEL FOR DEBTOR WHO, IN TURN, SHALL INFORM THE COURT.**

1

C.      *Overview of Chapter 11.*

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors, and equity interest holders. In addition to permitting a rehabilitation of a debtor, another goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated equity interest holders with respect to the distribution of a debtor's assets. The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that a debtor may continue to operate its business and remain in possession of its property as a debtor-in-possession.

The consummation of a plan of reorganization is the principal objective in a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by the Bankruptcy Court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan, and any creditor or equity interest holder of a debtor. Subject to limited exceptions, the confirmation order discharges a debtor from any debt that arose before the date of confirmation of the plan and substitutes the obligations specified under the confirmed plan.

After a plan of reorganization has been filed, the holders of claims against or interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, however, § 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. Debtor is submitting this Disclosure Statement to Holders of Claims against, and equity Interests in, Debtor to satisfy the requirements of § 1125 of the Bankruptcy Code.

## II.      **Exhibits to this Disclosure Statement.**

The following Exhibits are incorporated into and are a part of this Plan and Disclosure

Statement as set forth in Section 1.6 of the Plan.

A.      Liquidation Analysis

B.      Financial Information for Three Years Before the Petition Date

C.      Summary of Monthly Operating Reports Filed in this Chapter 11 Case

## III.      **Description of Debtor.**[1]

A.      *Describe the Debtor.* Debtor is a Michigan corporation that was in the business of supplying tooling and parts to the aerospace industry, providing full-service program management, on-site tool design, programming and machining, and on-site installations, among other goods and services. Debtor operated out of facilities located in Romeo, Michigan. Debtor employed 27 employees until Debtor sold substantially all its assets in the Sale authorized under 11 U.S.C. § 363 [*see*

---

[1] If Disclosure Statement conflicts with any Plan terms, the Plan terms govern.

DN 133]. Under the Plan, Debtor is liquidating its remaining assets and will wind-down its operations.

## B. *Description of the principals.*

### 1. *Background.*

John Zuccarini is the sole shareholder and President of Debtor. Mr. Zuccarini founded Debtor in 1989 and has always been its sole shareholder since its founding. Before founding the Debtor, Mr. Zuccarini worked in the resin formulating and textile weaving businesses. He received his degree from Ferris State University. Tony Lasala is the Debtor's Executive Vice President. Mr. Lasala has worked for the Debtor for 15 years and, before that, he worked in the automotive fixture and pattern industry for 25 years.

### 2. *Compensation.*

Until the Sale, Mr. Zuccarini was paid an annual salary of $150,000 and Mr. Lasala was paid an annual salary of $125,000. Mr. Zuccarini and Mr. Lasala also received medical and dental benefits from Debtor in plans provided to all Debtor's employees. After the Sale, subject in all respects to the terms of the Plan, including but not limited to section 4.1.1 of the Plan, Mr. Zuccarini and Mr. Lasala ceased earning their salaries, but have continued to provide services to the Debtor. Reorganized Debtor will compensate Mr. Zuccarini and Mr. Lasala at the rate of $75 per hour for services performed, subject to their recording of such services in sufficient detail to permit the Liquidating Plan Committee to review the reasonableness of the services performed and to object if appropriate. The $75 per hour is approximately wage earned pre-petition converted to an hourly amount.

### 3. *Their legal relationships with Debtor.*

a.    Mr. Zuccarini controls the John Zuccarini Living Trust (the "Zuccarini Trust"). The Zuccarini Trust owns two of three facilities in which the Debtor conducted business before the Sale and leased the facilities to the Debtor. The Zuccarini Trust asserts that it has a pre-petition claim for rent of $107,278.02 and a post-petition claim for rent of $13,125.00. As set forth in section 2.6 of the Plan, the post-petition amounts, if and to the extent Allowed, will be subordinated to all Administrative Claims and Priority Claims and will be deferred until the General Unsecured Claims Payment is made.

b.    Mr. Zuccarini asserts a Claim against Debtor for pre-petition amounts loaned to the Debtor or for goods purchased on Debtor's behalf with Mr. Zuccarini's credit card in the amount of $58,550.00, and for deferred post-petition salary of $7,000. As set forth in section 2.6 of the Plan, the post-petition amount, if and to the extent Allowed, will be subordinated to all Administrative Claims and Priority Claims and will be deferred until the General Unsecured Claims Payment is made.

c.    Sandra Zuccarini asserts a Claim against Debtor for pre-petition amounts loaned to Debtor in the amount of $233,710.36.

d.    The Debtor anticipates that the Bank and SBA will assert that both Mr. Zuccarini and the Zuccarini Trust guaranteed the Debtor's obligations to the Bank and SBA. The Bank is further secured by a mortgage on the two properties owned by the Zuccarini Trust.

3

e.     After the closing on the Sale on September 27, 2017, Mr. Zuccarini and Mr. Lasala accepted employment from the Purchaser along with the majority of Debtor's pre-petition work force.

C.     *The Debtor's business and the causes for the Chapter 11 filings.*

Before the Sale, Debtor was supplying tooling and parts to the aerospace industry, providing full-service program management, on-site tool design, programming and machining, and on-site installations, among other goods and services.

Mr. Zuccarini, after 25 years running the Debtor, sought some additional assistance with running the company starting around the second quarter of 2013. Debtor hired a person believed to be well qualified to share the point-person duties in terms of managing operations of the business. However, a combination of a loss of sales and failure to reduce the work force and operations in response to the reduced volumes resulted in significant cash flow difficulties and the Debtor began suffering substantial losses. For example, the company had too many employees doing the same jobs; and it started up a composite center which went over budget further restricting available cash. To recover revenue, Debtor issued quotes that were too low and, as a result of attempts to save money on materials, the company began to experience a high rate of chargebacks on the jobs that it shipped.

Although Mr. Zuccarini and his wife loaned substantial amounts to the Debtor in an attempt to prop up operations, losses continued to mount to the point that Debtor could not make payments as they came due, eventually pushing the Debtor to the point that they could no longer continue operations without Chapter 11 protection.

IV.     **Post-petition events of significance.**

A.     *Post-petition transfers outside of the ordinary course of business.*

There have been no post-petition transfers outside of the ordinary course of business during this case, except as authorized by the Bankruptcy Court.

On July 26, 2017, the Debtor filed a motion requesting authorization to sell substantially all its assets (the "Sale") [Docket No. 79]. On August 9, 2017, the Court entered an order establishing bidding procedures for the Sale and establishing procedures and a schedule for the Sale, assumption of contracts in connection with the Sale, and notice of the Sale [Docket No. 104]. On September 12, 2017, the Court entered an Order approving the Sale of substantially all Debtor's assets with the exception of business torts, cash, and Avoidance Actions [DN 133].

The Sale closed on September 27, 2017. As a result of the Closing, Debtor received $2,865,852 in its Debtor-in-possession account. Shortly after closing, Debtor transferred $2,162,301.16 to First State Bank in partial payment of First State Bank's Secured Claims; $57,838.97 to fund the DCC Fund; $339,408.24 to fund the SBA Fund; and retained $306,303.63 in the Debtor's estate. On November 14, 2017, Debtor filed a motion to determine the validity and priority of liens against the DCC Fund [Docket No. 153].

4

B. *Summaries of the important details of cash collateral, post-petition financing and adequate protection orders.*

    i. On July 6, 2017, the Court entered orders granting Debtor's Motions to use cash collateral on an interim basis, to pay pre-petition wages and employee benefits, and to obtain limited post-petition financing, if necessary [Docket Nos. 23, 24 and 29]. The Court granted Debtor authorization to use cash collateral and obtain post-petition financing on a final basis on July 27, 201 [Docket Nos. 81 and 82]. Although Debtor was authorized to obtain limited post-petition financing, Debtor did not, in fact, obtain post-petition financing, but Mr. Zuccarini asserts that the Debtor defered payments on salary payments to Mr. Zuccarini and short-paid rent owed to the Zuccarini Trust.

    ii. Also on July 24, 2017, the Court entered orders approving the employment of Wernette Heilman PLLC as counsel to the Debtor and Debtor-in-possession, and to employ Angle Advisors as Debtor's Investment Banker [Docket Nos. 71 and 72].

    iii. On August 2, 2017, the Court entered its order approving the employment of Varnum LLP by the Committee [Docket No. 96] and on August 8, 2017, the Court entered its Order authorizing the employment of Delta Management Resources, LLC as financial advisor for the Committee [Docket No. 102].

    iv. On October 30, 2017, the Court entered an order authorizing procedures for interim payment of fees and expenses of professionals employed by the Debtor and the Committee [Docket No. 145].

C. *Explain any litigation during the case.*

    i. On July 24, 2017, the Court denied the Debtor's Motion to Enforce the Automatic Stay against Louca Mold & Aerospace Machining, Inc. [Docket No. 39].

    ii. On November 14, 2017, the Debtor filed a Motion to determine the relative interests and priorities of Direct Capital Corporation and First State Bank in the DCC Fund.

    iii. On November 16, 2017, the Committee filed its *Ex Parte Motion for 2004 Examinations* describing facts relating to pre-petition connections and transactions between the Debtor, its principals, and non-Debtor and requesting entry of an order permitting the issuance of subpoenas requesting information and the examination under Rule 2004 to, among others, Mr. Zuccarini and the Zuccarini Trust [Docket No. 154].

**V.**    <u>**Assets and Liabilities**</u>.

A. Debtor's liquidation analyses is attached as **Exhibit A**.

5

B. *Risks, conditions and assumptions regarding the stated values.*

    i.    All values stated in the Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to Debtor. The estimates have not been audited. Other than cash, all valuations are necessarily estimates and actual results may result in higher or lower recoveries.

    ii.    Unless otherwise noted, Debtor has used the liabilities set forth in the Proofs of Claims and Schedules. These amounts are subject to adjustment and objections by Debtor.

    iii.    Costs of liquidation are estimates.

C. *Identify all potential claims and causes of action, including claims against insiders and avoidance actions.*

    i.    Debtor reserves all Causes of Action against Phil Kenney, a former officer of Debtor, for mismanagement, usurpation of corporate opportunities, conversion, breach of fiduciary duty and related Causes of Action, all related to his work while with the Debtor and for his efforts to divert work from the Debtor to Debtor's competitors for personal financial gain and the loss of business and receivables from Ducommon Incorporated.

    ii.    Debtor reserves all Causes of Action against Odyssey Industries, located in Lake Orion, Michigan, Ascent Aerospace and affiliated companies, and against Ducommun Incorporated and affiliates relating to the actions of Mr. Kenney and the diversion of work or contracts from Debtor to Odyssey Industries or affiliates and the loss of business and receivables from Ducommun Incorporated.

    iii.    Debtor reserves all potential Causes of Action against the Purchaser and affiliated entities relating to the Holdback Proceeds and the Purchaser's obligations under the Asset Purchase Agreement and any other agreements between Debtor and Purchaser. At this time, Debtor is not aware of any Cause of Action, but Debtor reserves the right to bring Causes of Action discovered or accruing after the date of this Disclosure Statement.

    iv.    Among other preserved Causes of Action, Debtor reserves all Avoidance Actions under Chapter 5 of the Bankruptcy Code and any applicable state law against all Persons that received property from Debtor's estate for less than reasonably equivalent value within six years of the Petition Date and while Debtor was insolvent.

    v.    Debtor reserves all Avoidance Actions for return of preferential transfers under 11 U.S.C. § 547. Potential defendants include all persons and entities (listed on Debtor's Statement of Financial Affairs) that received payments or transfers from the Debtor or of property belonging to the Debtor within 90 days before the Petition Date and all insiders that

6

received payments or transfers from the Debtor or of property belonging to the Debtor within 1 year before the Petition Date.

vi.  Debtor reserves all Avoidance Actions for return of unauthorized post-petition payments under 11 U.S.C. § 549. Potential defendants include all persons and and entities that received transfers for the Debtor after the Petition Date, except where the payment was authorized by a Court Order or by the Bankruptcy Code.

vii.  Debtor reserves all Causes of Action arising before or after the Petition Date, including against all Persons with which Debtor has contractual, trade or account relations, business torts, including tortious interference with contractual relations, breach of fiduciary duties, conversion, and all related Causes of Action.

viii.  All the above claims, Causes of Action, and Avoidance Actions, along with all rights and interests related to them, will vest with the Reorganized Debtor.

D.  *Information regarding guaranteed debt or persons co-liable with Debtor on any debt.*

i.  The SBA and First State Bank assert that Mr. Zuccarini and the Zuccarini Trust guaranteed Debtor's obligations to the SBA and First State Bank. As of the date of this Disclosure Statement, the amount owed to the SBA is $339,408.24, which SBA asserts is secured by a first position lien in the SBA Fund.

ii.  The amount owed to First State Bank is 628,964.13, plus certain fees and interest that may be asserted by First State Bank. The amount is secured by the SBA Fund and the DCC Fund, in both of which First State Bank may assert a first position security interest. The amount is also secured by mortgages against the two properties owned by the Zuccarini Trust.

iii.  Debtor anticipates that the IRS and Michigan Department of Treasury will assert that Mr. Zuccarini is co-liable with the Debtor for certain Priority Tax Claims they assert against Debtor for Debtor's failure to pay trust fund taxes.

## VI.  **Details regarding implementation of the Plan.**

A.  *Provide meaningful summaries of financial information in a consistent format for at least the following period:*

i.  *Three years pre-Petition Date*

See **Exhibit B**. Note that Debtor did not have financial statements prepared for the fiscal year ending May 31, 2016, and Debtor's accountants have not yet completed Debtor's tax returns for this time period.

ii.  *Post-Petition Date*

7

See summary of monthly operating reports filed in this Chapter 11 Case attached as **Exhibit C**. The full monthly operating reports are available on the Court's docket or can be obtained at request to Debtor's counsel.

B.     *State who will be in charge and the compensation to be paid to each, including fringe benefits.*

After the Effective Date of the Plan, subject in all respects to the terms of the Plan, including but not limited to section 4.1.1 of the Plan, Mr. Zuccarini will continue as President and Mr. Lasala serve as Vice President, with compensation set at $75 per hour for actual services rendered, subject to review and opportunity to object by the Liquidating Plan Committee. The Liquidating Plan Committee will be formed with the powers set forth in the Plan, and may retain a Chief Restructuring Officer and professionals.

C.     *State the tax ramifications for the continuing entity if the Plan is confirmed.*

i.     *To Debtor*:  Debtor is liquidating and will not receive a discharge and, thus, submits that it will not be subject to forgiveness of indebtedness income. However, Debtor believes that any forgiveness of indebtedness which may result from a discharge granted by the confirmation of the Plan will not result in a significant tax consequence to Debtor. The forgiveness of indebtedness, pursuant to the Internal Revenue Code, can be applied either to Debtor's basis in its assets or to its net operating loss carry forward. Debtor cannot accurately determine the amount and extent of any forgiveness of indebtedness. First, Debtor must determine if all of the Claims that have been filed, or deemed filed in this Case, are accurate. Also, depending on whether Debtor achieves or exceeds the projection in its current fiscal year, Debtor may elect to apply any forgiveness of a debt directly to its basis. Despite the fact that Debtor believes that it can either (a) apply such forgiveness of indebtedness to it net operating loss carry forward or (b) to its basis, it is not certain that the amount of forgiveness of debt will be totally offset by the foregoing. However, once these net operating losses are used by Debtor to offset forgiveness of indebtedness, they cannot be used again. Taxes paid by Debtor could, therefore, be impacted as a result of confirmation of the Plan.

ii.     *To Creditors*:  The tax consequences to each Creditor resulting from confirmation of the Plan may vary depending upon each Creditor's particular circumstances. Debtor recommends that Creditors and Holders of Claims obtain independent tax counsel to advise them of the tax consequences of the Plan.

**VII.     Legal requirements.**

A.     *Voting procedures*

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each

8

class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (a) that are listed on Debtor's Schedules of Assets and Liabilities other than as disputed, contingent, or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if the claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing the claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of a claim or interest should vote on the enclosed ballot to either accept or to reject the plan, and then return the ballot by mail to Debtor's attorney by the deadline previously established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtor's attorney.

B.    *Acceptance*

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

C.    *Confirmation*

Section § 1129(a)of 11 U.S.C. establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:

1.    Each class of impaired creditors and interests must accept the plan, as described in paragraph VI.B., above.

2.    Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

9

D.      *Modification*

Debtor reserves the right to modify or withdraw the Plan at any time before confirmation.

*E. Effect of confirmation*

*If the Plan is confirmed by the Court:*

1.      *Its terms will be binding on Debtor, all creditors, shareholders, and other parties in interest, regardless of whether they have accepted the Plan.*

2.      *Except as provided in the Plan:*

(a)      *In the case of a* <u>corporation</u> *that is liquidating and not continuing its business, as in this case:*

(1)      *Claims and interests will not be discharged.*

(2)      *Creditors and shareholders will be prohibited from asserting their claims against or interests in the Debtor or its assets.*

Submitted by:                                      Prepared by:

Plasco Tooling and Engineering                     WERNETTE HEILMAN PLLC
Corporation, Debtor


  /s/ John Zuccarini                               By:  /s/  Ryan D. Heilman
By: John Zuccarini                                 Ryan D. Heilman (P63952)
Its: President                                     Michael R. Wernette (P55659)
                                                   Attorneys for Debtor
                                                   24725 W. 12 Mile Rd., Suite 110
Dated: November 22, 2017                           Southfield, MI 48034
                                                   Telephone:  (248) 663-5146
                                                   Email:  ryan@wernetteheilman.com

10

EXHIBIT A

to Debtor's Disclosure Statement


LIQUIDATION ANALYSIS

**Liquidation Analysis –**
**Exhibit A to**
**Debtor's Combined Plan of Liquidation and Disclosure Statement**
**Plasco Tooling and Engineering Corporation**
**Case No. 17-49638-mar (Bankr. E.D. Mich.)**

| Description of Debtor's Assets | Lien Holder(s) | Secured Value Est. | Claim Amt. | Equity for Estate | Comments |
|---|---|---|---|---|---|
| Cash in Bank | Macomb County | $299,891.66 | $6,303.63 | $299,891.66 | Remaining proceeds from Sale carve out |
| SBA Fund | SBA<br>First State Bank | $339,408.24 | $339,408.24<br>$628,964.13 | 0<br>0 | Determination has not been on whether SBA or Bank has first priority |
| DCC Fund | Direct Capital Corp.<br>First State Bank | $57,839.97 | $57,839.97<br>$628,964.13 | 0<br>0 | Determination has not been on whether DCC or Bank has first priority |
| Holdback Proceeds | First State Bank | $200,000 | $628,964.13 | 0 | |
| Preference Actions | None | Unknown | N/A | Unknown | See Exhibit 1 – Debtor's check registers for 90-days pre-petition |
| Other Avoidance Actions | None | Unknown | N/A | Unknown | |
| Preserved tort claims | None | Unknown | N/A | Unknown | Claims relating to pre-petition management of Debtor and diversion of work |
| Preserved Insider Claims | None | Unknown | N/A | Unknown | Claims relating to pre-petition transfers and activities of Insiders and other affiliates |
| **Totals**: | | $897,139.87 | $1,032,515.97 | $293,588.03 | |

**Liquidation Analysis –**
**Exhibit A to**
**Debtor's Combined Plan of Liquidation and Disclosure Statement**
**Plasco Tooling and Engineering Corporation**
**Case No. 17-49638-mar (Bankr. E.D. Mich.)**

| <u>Secured Claims</u> | <u>Est. Amt.</u> | <u>Comments</u> |
|---|---|---|
| First State Bank | $628,964.13 | First State Bank may also assert additional fees and accrued interest. |
| SBA | $339,408.24 | SBA and First State Bank may assert a first position security interest in all or some of the SBA Fund. |
| DCC | $57,839.97 | DCC asserts either an ownership interest or first position security interest In the DCC Fund, and First State Bank asserts a first priority security Interest. Debtor has filed a motion to determine the priority of the relevant Interests. |
| Macomb County | $6,303.63 | Personal property taxes. |
| **Total:** | **$1,032,515.97** | |

| <u>Administrative Claims to Date</u> | <u>Est. Amt.</u> | <u>Comments</u> |
|---|---|---|
| Professional Fees | $140,000 | Estimated accrued but unpaid professional fees, including success fee for Debtor's investment banker, for Debtor's counsel, and for Committee's counsel and financial advisor, after application of retainers. |
| Tax Accountant Fees | $5,000 | Estimated fees for the completion of Debtor's 2016 Tax Returns. |
| Post-petition federal payroll taxes | $134,366.98 | |
| Post-petition state payroll taxes | $16,950.31 | |
| Other Administrative Expenses | $20,000 | Includes U.S. Trustee fees plus an estimate for various post-petition amounts owed to vendors and utility companies that may or may not be paid by the Purchaser as part of the Sale agreement. |
| **Total**: | **$316,317.29** | |

**Liquidation Analysis –**
**Exhibit A to**
**Debtor's Combined Plan of Liquidation and Disclosure Statement**
**Plasco Tooling and Engineering Corporation**
**Case No. 17-49638-mar (Bankr. E.D. Mich.)**

| Priority Claims | Est. Amt. | Comments |
|---|---|---|
| IRS | $100 | POC 40   -   Debtor scheduled this claim at $194,450.00, but the IRS' filed a proof of claim asserting only $100 in priority claims. |
| Michigan Department of Treasury | $47,183.26 | POC 69   -   Debtor also scheduled $38,049.51 for withholding and unemployment which was not included on POC 69. |

| General Unsecured Claims | Est. Amt. | Comments |
|---|---|---|
| Scheduled Claims | $4,080,000 | Estimated general unsecured claims using POC amounts in place of scheduled amounts. |

**Distribution of Proceeds**

| | |
|---|---|
| Total Available for distribution after Secured Claims: | $293,588.03, plus proceeds of Avoidance Actions, plus proceeds of Causes of Actions against insiders, plus preserved tort Causes of Action |
| Total Available for distribution after Administrative Claims and Priority Claims: | Any distribution is wholly dependent on (i) the amount of Allowed Administrative Claims and Allowed Priority Claims, (ii) the expense of liquidating Debtor's assets and winding up Debtor's affairs and (ii) the proceeds of Avoidance Actions, insider Causes of Action and other preserved Causes of Action. |

The likelihood of a substantial distribution to General Unsecured Claim Holders is remote.

# EXHIBIT 1

## to Debtor's Liquidation Analysis

## CHECK REGISTER
## DISCLOSING POTENTIAL
## PREFERENCE DEFENDANTS

# Checkbook Register

## Plasco Corporation

**Date:** 10/17/17
**Time:** 02:08:54 pm

For Bank Code: 1ST

Transactions Dated 04/01/17 through 06/29/17

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|-------:|--------:|
| | 04/01/17 | | Opening Balance | -$5,737.46 | -$5,737.46 |
| SAT | 04/01/17 | 10022 | Hodgson Custom Rolling Inc | -$500.00 | -$6,237.46 |
| SAT | 04/01/17 | 10023 | *** VOID *** Tony Lasala | $.00 | -$6,237.46 |
| SAT | 04/01/17 | MAR17-5009 | Wells Fargo | -$4,740.80 | -$10,978.26 |
| MON | 04/03/17 | 20271 | TFB Plastics Inc | -$88.20 | -$11,066.46 |
| THU | 04/06/17 | 10029 | Ronald B Rich Trust | -$536.00 | -$11,602.46 |
| FRI | 04/07/17 | 10028 | Merrill Tool | -$4,656.33 | -$16,258.79 |
| WED | 04/12/17 | 20276 | Apelott Industrial Sales | -$1,522.42 | -$17,781.21 |
| THU | 04/13/17 | | Trasnsfer to FSB | $35,000.00 | $17,218.79 |
| THU | 04/13/17 | 041317 | First StateBank | -$7,165.11 | $10,053.68 |
| THU | 04/13/17 | 10030 | Finish Works Carpentry | -$6,264.00 | $3,789.68 |
| THU | 04/13/17 | 10031 | Thumb Alarm Systems Inc | -$74.85 | $3,714.83 |
| THU | 04/13/17 | 41317 | First StateBank | -$7,083.33 | -$3,368.50 |
| THU | 04/13/17 | APRIL1317 | Card Member Services | -$1,500.00 | -$4,868.50 |
| WED | 04/19/17 | | Trasnfer to FSB | $3,500.00 | -$1,368.50 |
| THU | 04/20/17 | | TRANSFER TO FSB | $1,000.00 | -$368.50 |
| THU | 04/20/17 | 10032 | KBC Tools & Machinery | -$136.35 | -$504.85 |
| THU | 04/20/17 | 10033 | Chromaflo Technologies | -$256.05 | -$760.90 |
| MON | 04/24/17 | | Debit for Mac Mold | -$968.18 | -$1,729.08 |
| TUE | 04/25/17 | | Tansfer to FSB | $500.00 | -$1,229.08 |
| FRI | 04/28/17 | | Force Bank Rec | $233.65 | -$995.43 |
| FRI | 04/28/17 | 04282017 | First StateBank | -$5.00 | -$1,000.43 |
| MON | 05/01/17 | | Transfer to PNC | -$4,000.00 | -$5,000.43 |
| MON | 05/01/17 | | Deposit | $63,580.31 | $58,579.88 |
| MON | 05/01/17 | 050117 | American Express | -$546.21 | $58,033.67 |
| MON | 05/01/17 | 05012017 | Blue Care Network | -$17,716.34 | $40,317.33 |
| MON | 05/01/17 | APR17-7682 | First StateBank | -$4,161.75 | $36,155.58 |
| MON | 05/01/17 | MAY17-328 | First StateBank | -$5,547.07 | $30,608.51 |
| MON | 05/01/17 | MAY17-5009 | Wells Fargo | -$4,740.80 | $25,867.71 |
| MON | 05/01/17 | MAY17-6470 | First StateBank | -$7,165.11 | $18,702.60 |
| MON | 05/01/17 | MAY17-7019 | First StateBank | -$6,666.66 | $12,035.94 |
| MON | 05/01/17 | MAY17-7521 | First StateBank | -$5,492.05 | $6,543.89 |
| WED | 05/03/17 | 10034 | Metal Mart | -$545.94 | $5,997.95 |
| WED | 05/03/17 | 20278 | Apelott Industrial Sales | -$574.59 | $5,423.36 |
| THU | 05/04/17 | 5317 | Exxon Mobil Processing Center | -$300.00 | $5,123.36 |
| FRI | 05/05/17 | 20279 | Clinton Aluminum | -$132.22 | $4,991.14 |
| MON | 05/08/17 | | Transfer to PNC | -$3,300.00 | $1,691.14 |
| MON | 05/08/17 | 050817 | American Express | -$600.00 | $1,091.14 |
| THU | 05/11/17 | | Trasnfer to FSB | $600.00 | $1,691.14 |
| THU | 05/11/17 | 51117 | First StateBank | -$34.00 | $1,657.14 |
| TUE | 05/16/17 | | Deposit | $13,504.00 | $15,161.14 |
| TUE | 05/16/17 | 051717 | Semco Energy Gas | -$610.66 | $14,550.48 |
| TUE | 05/16/17 | 10036 | Advanced Polymers Composite | -$7,788.00 | $6,762.48 |
| TUE | 05/16/17 | 10037 | Ronald B Rich Trust | -$536.20 | $6,226.28 |
| TUE | 05/16/17 | 10038 | AHB Tooling& Machinery | -$500.00 | $5,726.28 |
| WED | 05/17/17 | 05172017 | Semco Energy Gas Company | -$794.96 | $4,931.32 |
| WED | 05/17/17 | 10035 | Classic Heating & Cooling | -$974.00 | $3,957.32 |
| WED | 05/17/17 | 51717 | Semco Energy Gas Company | -$366.00 | $3,591.32 |
| THU | 05/18/17 | 51817 | Verizon Wireless | -$584.42 | $3,006.90 |

17-49638-mar    Doc 160    Filed 11/22/17    Entered 11/22/17 12:31:57    Page 38 of 55

# Checkbook Register
## Plasco Corporation
For Bank Code: 1ST
Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17
**Time:** 02:08:54 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| FRI | 05/19/17 | 05192017 | Semco Energy Gas Company | -$996.78 | $2,010.12 |
| WED | 05/24/17 | | Transfer | -$86,639.64 | -$84,629.52 |
| WED | 05/24/17 | | Deposit | $114,139.64 | $29,510.12 |
| WED | 05/24/17 | 052417 | DTE Energy-14971 | -$1,069.97 | $28,440.15 |
| WED | 05/24/17 | 05242017 | DTE Energy-173 | -$1,260.69 | $27,179.46 |
| WED | 05/24/17 | 10039 | TFB Plastics Inc | -$5,043.14 | $22,136.32 |
| WED | 05/24/17 | 10040 | *** VOID *** Tony Lasala | $.00 | $22,136.32 |
| WED | 05/24/17 | 10041 | Tony Lasala | -$426.00 | $21,710.32 |
| WED | 05/24/17 | 10042 | DCS Waterjet Services | -$1,390.00 | $20,320.32 |
| WED | 05/24/17 | 10043 | *** VOID *** Blue Cross Blue S | $.00 | $20,320.32 |
| WED | 05/24/17 | 10044 | Blue Cross Blue Shield Of MI | -$3,719.25 | $16,601.07 |
| WED | 05/24/17 | 10045 | PC Shards LLC | -$3,191.20 | $13,409.87 |
| WED | 05/24/17 | 20281 | Home Depot | -$1,236.02 | $12,173.85 |
| WED | 05/24/17 | 20282 | Metal Mart | -$740.00 | $11,433.85 |
| WED | 05/24/17 | 52417 | DTE Energy-14951 | -$3,362.20 | $8,071.65 |
| WED | 05/24/17 | 9991-1 | UPS | -$292.13 | $7,779.52 |
| WED | 05/24/17 | 9999-1 | UPS | -$2,233.55 | $5,545.97 |
| WED | 05/24/17 | CR1 | G&F Prototype Plaster | $.00 | $5,545.97 |
| WED | 05/24/17 | CR2 | MAK Industries | $.00 | $5,545.97 |
| WED | 05/24/17 | CR3 | MAK Industries | $.00 | $5,545.97 |
| WED | 05/24/17 | MAY24 | Comcast | -$939.93 | $4,606.04 |
| WED | 05/24/17 | MAY242017 | Bank Of America | -$500.00 | $4,106.04 |
| THU | 05/25/17 | 10046 | Aladdin Machining | -$11,510.00 | -$7,403.96 |
| THU | 05/25/17 | 20283 | Apelott Industrial Sales | -$2,504.80 | -$9,908.76 |
| FRI | 05/26/17 | | Deposit | $75,771.00 | $65,862.24 |
| FRI | 05/26/17 | CTCHK | Accurate Welding & Fabricating | -$72,523.45 | -$6,661.21 |
| WED | 05/31/17 | | DEREK COBRA | $1,100.44 | -$5,560.77 |
| WED | 05/31/17 | | PHIL COBRA | $1,161.91 | -$4,398.86 |
| WED | 05/31/17 | | Transfer to FSB | $10,000.00 | $5,601.14 |
| WED | 05/31/17 | 053117 | Direct Capital | -$2,754.36 | $2,846.78 |
| WED | 05/31/17 | 53117 | First StateBank | -$5.00 | $2,841.78 |
| WED | 05/31/17 | C-53117 | Sun Life Financial | $.00 | $2,841.78 |
| THU | 06/01/17 | | Transfer from PNC | $4,000.00 | $6,841.78 |
| THU | 06/01/17 | | | $1,034.18 | $7,875.96 |
| THU | 06/01/17 | 060117 | Direct Capital | -$2,754.36 | $5,121.60 |
| THU | 06/01/17 | JUNE17 | Wells Fargo | -$4,740.80 | $380.80 |
| FRI | 06/02/17 | | Transfer from PNC | $31,000.00 | $31,380.80 |
| FRI | 06/02/17 | JUNE-328 | First StateBank | -$5,547.07 | $25,833.73 |
| FRI | 06/02/17 | JUNE-6470 | First StateBank | -$7,165.11 | $18,668.62 |
| FRI | 06/02/17 | JUNE-7019 | First StateBank | -$6,888.88 | $11,779.74 |
| FRI | 06/02/17 | JUNE-7521 | First StateBank | -$5,492.05 | $6,287.69 |
| FRI | 06/02/17 | MAY-7682 | First StateBank | -$4,161.75 | $2,125.94 |
| TUE | 06/06/17 | 20284 | Clinton Aluminum | -$115.20 | $2,010.74 |
| TUE | 06/06/17 | 20285 | Apelott Industrial Sales | -$578.02 | $1,432.72 |
| THU | 06/08/17 | 10047 | Harry Obsorne | -$450.00 | $982.72 |
| MON | 06/12/17 | 20286 | Gladys Ellgass | -$400.00 | $582.72 |
| TUE | 06/13/17 | 20287 | Clinton Aluminum | -$93.12 | $489.60 |
| WED | 06/14/17 | 10048 | Elite Imaging Systems | -$118.18 | $371.42 |
| WED | 06/21/17 | CM1 | Mac Mold Base | $.00 | $371.42 |
| THU | 06/29/17 | | Deposit | $.00 | $371.42 |

# Checkbook Register

## Plasco Corporation
For Bank Code: 1ST
Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17
**Time:** 02:08:54 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|

# Checkbook Register

## Plasco Corporation

For Bank Code:  PNC

Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17

**Time:** 02:09:48 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
|     | 04/01/17 |        | Opening Balance | $2,990.36 | $2,990.36 |
| TUE | 04/04/17 | 040317 | American Express | -$414.00 | $2,576.36 |
| WED | 04/05/17 |        | Transfer | $2,000.00 | $4,576.36 |
| WED | 04/05/17 |        | Frank & Kyle Medical | $531.18 | $5,107.54 |
| WED | 04/05/17 | 2431   | TFB Plastics Inc | -$2,500.00 | $2,607.54 |
| WED | 04/05/17 | 2432   | Apelott Industrial Sales | -$199.13 | $2,408.41 |
| FRI | 04/07/17 |        | SANDY Z | $62,100.00 | $64,508.41 |
| FRI | 04/07/17 |        |             | -$623.50 | $63,884.91 |
| FRI | 04/07/17 |        |             | -$4,601.35 | $59,283.56 |
| FRI | 04/07/17 |        |             | -$1,735.78 | $57,547.78 |
| FRI | 04/07/17 |        |             | -$1,238.70 | $56,309.08 |
| FRI | 04/07/17 |        |             | -$1,577.29 | $54,731.79 |
| FRI | 04/07/17 |        |             | -$2,211.40 | $52,520.39 |
| FRI | 04/07/17 |        |             | -$4,278.76 | $48,241.63 |
| FRI | 04/07/17 |        |             | -$3,823.75 | $44,417.88 |
| FRI | 04/07/17 |        |             | -$3,014.23 | $41,403.65 |
| FRI | 04/07/17 |        |             | -$677.32 | $40,726.33 |
| FRI | 04/07/17 |        |             | -$1,021.37 | $39,704.96 |
| FRI | 04/07/17 |        |             | -$1,250.34 | $38,454.62 |
| FRI | 04/07/17 |        |             | -$2,739.27 | $35,715.35 |
| FRI | 04/07/17 |        |             | -$1,674.96 | $34,040.39 |
| FRI | 04/07/17 |        |             | -$1,785.90 | $32,254.49 |
| FRI | 04/07/17 |        |             | -$1,233.94 | $31,020.55 |
| FRI | 04/07/17 |        |             | -$1,880.77 | $29,139.78 |
| FRI | 04/07/17 |        |             | -$1,749.40 | $27,390.38 |
| FRI | 04/07/17 |        |             | -$2,407.61 | $24,982.77 |
| FRI | 04/07/17 |        |             | -$3,836.52 | $21,146.25 |
| FRI | 04/07/17 |        |             | -$1,597.74 | $19,548.51 |
| FRI | 04/07/17 |        |             | -$1,617.03 | $17,931.48 |
| FRI | 04/07/17 |        |             | -$2,245.55 | $15,685.93 |
| FRI | 04/07/17 |        |             | -$2,646.14 | $13,039.79 |
| FRI | 04/07/17 |        |             | -$1,536.49 | $11,503.30 |
| FRI | 04/07/17 |        |             | -$2,177.46 | $9,325.84 |
| FRI | 04/07/17 |        |             | -$1,414.00 | $7,911.84 |
| FRI | 04/07/17 |        |             | -$1,441.43 | $6,470.41 |
| FRI | 04/07/17 |        |             | -$787.71 | $5,682.70 |
| FRI | 04/07/17 |        |             | -$1,166.93 | $4,515.77 |
| FRI | 04/07/17 |        |             | -$300.94 | $4,214.83 |
| FRI | 04/07/17 |        |             | -$780.94 | $3,433.89 |
| FRI | 04/07/17 |        |             | -$2,053.04 | $1,380.85 |
| FRI | 04/07/17 |        |             | -$2,056.84 | -$675.99 |
| FRI | 04/07/17 |        |             | -$396.70 | -$1,072.69 |
| FRI | 04/07/17 |        |             | -$3,184.11 | -$4,256.80 |
| FRI | 04/07/17 |        |             | -$1,479.27 | -$5,736.07 |
| FRI | 04/07/17 |        |             | -$2,398.38 | -$8,134.45 |
| FRI | 04/07/17 |        |             | -$1,127.43 | -$9,261.88 |
| FRI | 04/07/17 |        |             | -$165.29 | -$9,427.17 |
| FRI | 04/07/17 |        |             | -$46.15 | -$9,473.32 |
| FRI | 04/07/17 |        |             | -$74.60 | -$9,547.92 |

# Checkbook Register

## Plasco Corporation

For Bank Code: PNC
Transactions Dated 04/01/17 through 06/29/17

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| FRI | 04/07/17 | | 401K | -$2,979.51 | -$12,527.43 |
| FRI | 04/07/17 | 2433 | Apelott Industrial Sales | -$456.88 | -$12,984.31 |
| TUE | 04/11/17 | 14856 | Clinton Aluminum | -$5,555.00 | -$18,539.31 |
| THU | 04/13/17 | | Transfer to FSB | -$35,000.00 | -$53,539.31 |
| THU | 04/13/17 | | Deposit | $56,832.79 | $3,293.48 |
| THU | 04/13/17 | 041318 | Comcast | -$193.96 | $3,099.52 |
| THU | 04/13/17 | 04132017 | Marathon Petroleum Company | -$800.00 | $2,299.52 |
| THU | 04/13/17 | 14857 | AHB Tooling& Machinery | -$500.00 | $1,799.52 |
| THU | 04/13/17 | 14858 | Nationwide Pension Services | -$425.00 | $1,374.52 |
| THU | 04/13/17 | 41317-1 | AFLAC | -$493.74 | $880.78 |
| THU | 04/13/17 | 41318 | Comcast | -$463.92 | $416.86 |
| THU | 04/13/17 | 4132017 | Bank Of America-Corporate | -$500.00 | -$83.14 |
| THU | 04/13/17 | APR1317 | American Express | -$600.00 | -$683.14 |
| THU | 04/13/17 | APR132017 | Comcast Business | -$497.41 | -$1,180.55 |
| MON | 04/17/17 | | SUI updated | -$7,946.24 | -$9,126.79 |
| MON | 04/17/17 | | Deposit | $178,232.00 | $169,105.21 |
| MON | 04/17/17 | 041717 | DTE Energy-14971 | -$1,149.54 | $167,955.67 |
| MON | 04/17/17 | 14859 | Aladdin Machining | -$11,360.00 | $156,595.67 |
| MON | 04/17/17 | 14860 | *** VOID *** Waste Management | $.00 | $156,595.67 |
| MON | 04/17/17 | 14861 | *** VOID *** UPS | $.00 | $156,595.67 |
| MON | 04/17/17 | 14862 | *** VOID *** Stone Aces Of Rom | $.00 | $156,595.67 |
| MON | 04/17/17 | 14863 | Romeo Motor Parts Inc | -$184.70 | $156,410.97 |
| MON | 04/17/17 | 14864 | Van Dyke Gas | -$626.19 | $155,784.78 |
| MON | 04/17/17 | 14865 | *** VOID *** South Park Weldin | $.00 | $155,784.78 |
| MON | 04/17/17 | 14866 | The Village Florist | -$148.40 | $155,636.38 |
| MON | 04/17/17 | 14867 | First Choice Coffee Services | -$704.28 | $154,932.10 |
| MON | 04/17/17 | 14868 | Orkin Pest Control | -$72.38 | $154,859.72 |
| MON | 04/17/17 | 14869 | M5 Engineering | -$2,800.00 | $152,059.72 |
| MON | 04/17/17 | 14870 | Scotts Plumbing Supply | -$154.44 | $151,905.28 |
| MON | 04/17/17 | 14871 | Rocket Enterprise Inc | -$432.60 | $151,472.68 |
| MON | 04/17/17 | 14872 | Swift Plumbing | -$105.00 | $151,367.68 |
| MON | 04/17/17 | 14873 | State Of Michigan | -$50.00 | $151,317.68 |
| MON | 04/17/17 | 14874 | Bell Forklift | -$1,358.00 | $149,959.68 |
| MON | 04/17/17 | 14876 | UPS | -$1,626.34 | $148,333.34 |
| MON | 04/17/17 | 14877 | *** VOID *** Fed Ex Freight | $.00 | $148,333.34 |
| MON | 04/17/17 | 41717 | DTE Energy-14951 | -$3,273.36 | $145,059.98 |
| MON | 04/17/17 | 4172017 | DTE Energy-173 | -$1,394.62 | $143,665.36 |
| MON | 04/17/17 | APR17 | Bank Of America | -$700.00 | $142,965.36 |
| MON | 04/17/17 | APR2017 | PNC Corporate Card | -$1,000.00 | $141,965.36 |
| MON | 04/17/17 | BWIRE | Evolution Tool | -$12,000.00 | $129,965.36 |
| MON | 04/17/17 | EFT041717 | Verizon Wireless | -$621.89 | $129,343.47 |
| MON | 04/17/17 | EFT41717 | Ascentium Capital | -$1,931.11 | $127,412.36 |
| TUE | 04/18/17 | 14875 | *** VOID *** Evolution Tool | $.00 | $127,412.36 |
| TUE | 04/18/17 | 14878 | Tony Lasala | -$2,200.00 | $125,212.36 |
| TUE | 04/18/17 | 14879 | TFB Plastics Inc | -$6,383.72 | $118,828.64 |
| TUE | 04/18/17 | 2435 | Aladdin Machining | -$150.00 | $118,678.64 |
| WED | 04/19/17 | | Transfer to FSB | -$3,500.00 | $115,178.64 |
| WED | 04/19/17 | 041917 | American Express-Delta | -$305.18 | $114,873.46 |
| WED | 04/19/17 | 14880 | Apelott Industrial Sales | -$1,571.81 | $113,301.65 |
| WED | 04/19/17 | 14881 | John Jones | -$1,481.25 | $111,820.40 |

# Checkbook Register
## Plasco Corporation
For Bank Code:  PNC
Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17
**Time:** 02:09:49 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| THU | 04/20/17 | | TRANSFER TO FSB | -$1,000.00 | $110,820.40 |
| THU | 04/20/17 | 14889 | Advanced Polymers Composite | -$632.00 | $110,188.40 |
| THU | 04/20/17 | 2437 | Apelott Industrial Sales | -$1,011.50 | $109,176.90 |
| FRI | 04/21/17 | | Nichole Phone Payment | $44.43 | $109,221.33 |
| FRI | 04/21/17 | 15487 | | -$623.50 | $108,597.83 |
| FRI | 04/21/17 | 15488 | | -$4,601.35 | $103,996.48 |
| FRI | 04/21/17 | 15489 | | -$1,843.73 | $102,152.75 |
| FRI | 04/21/17 | 15490 | | -$1,279.70 | $100,873.05 |
| FRI | 04/21/17 | 15491 | | -$1,225.19 | $99,647.86 |
| FRI | 04/21/17 | 15492 | | -$2,180.95 | $97,466.91 |
| FRI | 04/21/17 | 15493 | | -$4,278.76 | $93,188.15 |
| FRI | 04/21/17 | 15494 | | -$3,823.75 | $89,364.40 |
| FRI | 04/21/17 | 15495 | | -$2,832.03 | $86,532.37 |
| FRI | 04/21/17 | 15496 | | -$227.53 | $86,304.84 |
| FRI | 04/21/17 | 15486 | | -$153.89 | $86,150.95 |
| FRI | 04/21/17 | 15497 | | -$1,941.08 | $84,209.87 |
| FRI | 04/21/17 | 15498 | | -$1,284.87 | $82,925.00 |
| FRI | 04/21/17 | 15499 | | -$1,291.12 | $81,633.88 |
| FRI | 04/21/17 | 15500 | | -$1,078.90 | $80,554.98 |
| FRI | 04/21/17 | 15501 | | -$1,478.10 | $79,076.88 |
| FRI | 04/21/17 | 15502 | | -$1,749.40 | $77,327.48 |
| FRI | 04/21/17 | 15503 | | -$2,722.19 | $74,605.29 |
| FRI | 04/21/17 | 15504 | | -$3,091.94 | $71,513.35 |
| FRI | 04/21/17 | 15505 | | -$1,048.38 | $70,464.97 |
| FRI | 04/21/17 | 15506 | | -$1,444.33 | $69,020.64 |
| FRI | 04/21/17 | 15507 | | -$1,833.78 | $67,186.86 |
| FRI | 04/21/17 | 15508 | | -$2,084.00 | $65,102.86 |
| FRI | 04/21/17 | 15509 | | -$1,353.15 | $63,749.71 |
| FRI | 04/21/17 | 15510 | | -$1,662.67 | $62,087.04 |
| FRI | 04/21/17 | 15511 | | -$2,617.53 | $59,469.51 |
| FRI | 04/21/17 | 15512 | | -$733.89 | $58,735.62 |
| FRI | 04/21/17 | 15513 | | -$1,073.71 | $57,661.91 |
| FRI | 04/21/17 | 15514 | | -$1,210.96 | $56,450.95 |
| FRI | 04/21/17 | 15515 | | -$1,726.50 | $54,724.45 |
| FRI | 04/21/17 | 15516 | | -$1,616.49 | $53,107.96 |
| FRI | 04/21/17 | 15517 | | -$1,956.75 | $51,151.21 |
| FRI | 04/21/17 | 15518 | | -$3,184.11 | $47,967.10 |
| FRI | 04/21/17 | 15519 | | -$1,093.55 | $46,873.55 |
| FRI | 04/21/17 | 15520 | | -$2,398.38 | $44,475.17 |
| FRI | 04/21/17 | 15521 | | -$1,009.06 | $43,466.11 |
| FRI | 04/21/17 | | | $.00 | $43,466.11 |
| FRI | 04/21/17 | | | $.00 | $43,466.11 |
| FRI | 04/21/17 | | | $.00 | $43,466.11 |
| FRI | 04/21/17 | | | $.00 | $43,466.11 |
| FRI | 04/21/17 | | | $.00 | $43,466.11 |
| FRI | 04/21/17 | 15524 | | -$74.60 | $43,391.51 |
| FRI | 04/21/17 | 15523 | | -$153.90 | $43,237.61 |
| FRI | 04/21/17 | | | -$30,432.52 | $12,805.09 |
| FRI | 04/21/17 | 15525 | | -$2,822.84 | $9,982.25 |
| FRI | 04/21/17 | 15522 | | -$46.15 | $9,936.10 |

17-49638-mar     Doc 160     Filed 11/22/17     Entered 11/22/17 12:31:57     Page 43 of 55

# Checkbook Register

## Plasco Corporation

For Bank Code: PNC
Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17
**Time:** 02:09:49 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| FRI | 04/21/17 | | | -$137.13 | $9,798.97 |
| FRI | 04/21/17 | | Deposit | $38,356.62 | $48,155.59 |
| FRI | 04/21/17 | 04212017 | Faro Tecnologies | -$3,500.00 | $44,655.59 |
| FRI | 04/21/17 | 14890 | Apelott Industrial Sales | -$1,182.75 | $43,472.84 |
| FRI | 04/21/17 | 14891 | Blue Cross Blue Shield Of MI | -$11,544.87 | $31,927.97 |
| FRI | 04/21/17 | 14892 | Blue Water Air Compressor | -$4,379.60 | $27,548.37 |
| FRI | 04/21/17 | 14893 | MBPA | -$120.00 | $27,428.37 |
| FRI | 04/21/17 | 14894 | Experi-Metal | -$2,500.00 | $24,928.37 |
| FRI | 04/21/17 | 42117 | Bank Of America | -$500.00 | $24,428.37 |
| MON | 04/24/17 | 042417 | Marathon Petroleum Company | -$770.38 | $23,657.99 |
| MON | 04/24/17 | 14895 | Young Basile Hanlon | -$93.75 | $23,564.24 |
| MON | 04/24/17 | 14896 | Metro Welding Supply Corp | -$1,906.71 | $21,657.53 |
| MON | 04/24/17 | 14897 | Petty Cash | -$978.92 | $20,678.61 |
| MON | 04/24/17 | 14898 | Apelott Industrial Sales | -$1,327.71 | $19,350.90 |
| MON | 04/24/17 | 14899 | DCS Waterjet Services | -$1,584.00 | $17,766.90 |
| MON | 04/24/17 | 2439 | Apelott Industrial Sales | -$1,454.19 | $16,312.71 |
| MON | 04/24/17 | 2442 | Apelott Industrial Sales | -$975.25 | $15,337.46 |
| MON | 04/24/17 | 2443 | Gladys Ellgass | -$175.00 | $15,162.46 |
| MON | 04/24/17 | 42417 | Waste Management | -$914.68 | $14,247.78 |
| TUE | 04/25/17 | | Transfer to FSB | -$500.00 | $13,747.78 |
| WED | 04/26/17 | 14900 | Daryl Vaughn | -$376.32 | $13,371.46 |
| WED | 04/26/17 | 14901 | Tony Lasala | -$1,120.67 | $12,250.79 |
| WED | 04/26/17 | 5118 | Clinton Aluminum | -$107.06 | $12,143.73 |
| FRI | 04/28/17 | | Bank Fees | -$210.00 | $11,933.73 |
| FRI | 04/28/17 | | Deposit | $23,430.09 | $35,363.82 |
| FRI | 04/28/17 | 042817 | Humana Dental Insurance | -$1,900.71 | $33,463.11 |
| FRI | 04/28/17 | 14902 | Northlawn LLC | -$3,175.00 | $30,288.11 |
| FRI | 04/28/17 | 14903 | Auburn Industries Inc. | -$5,000.00 | $25,288.11 |
| FRI | 04/28/17 | 14904 | John Jones | -$1,481.25 | $23,806.86 |
| FRI | 04/28/17 | 42817 | Faro Tecnologies | -$2,500.00 | $21,306.86 |
| FRI | 04/28/17 | 492135049 | ADP EZ Labor MGR | -$55.50 | $21,251.36 |
| SUN | 04/30/17 | | | -$2,499.98 | $18,751.38 |
| MON | 05/01/17 | | Mac Mold Law Suit fee | -$100.00 | $18,651.38 |
| MON | 05/01/17 | | Transfer to PNC | $4,000.00 | $22,651.38 |
| MON | 05/01/17 | 14905 | TFB Plastics Inc | -$2,061.00 | $20,590.38 |
| MON | 05/01/17 | 14906 | *** VOID *** DCS Waterjet Serv | $.00 | $20,590.38 |
| MON | 05/01/17 | 14907 | Gerry Baumgarten | -$600.00 | $19,990.38 |
| MON | 05/01/17 | 14908 | American Mobile Office Cont. | -$381.60 | $19,608.78 |
| MON | 05/01/17 | 14909 | Wells Fargo Vendor Fin Serv | -$147.67 | $19,461.11 |
| MON | 05/01/17 | 2446 | Gladys Ellgass | -$200.00 | $19,261.11 |
| MON | 05/01/17 | MAY17 | Card Member Services | -$1,500.00 | $17,761.11 |
| MON | 05/01/17 | MAY2017 | Comcast | -$215.46 | $17,545.65 |
| TUE | 05/02/17 | 041217 | Secura Insurance Company | -$562.45 | $16,983.20 |
| TUE | 05/02/17 | 14910 | Rolled Alloys | -$1,700.00 | $15,283.20 |
| FRI | 05/05/17 | | Sandy Loan | $36,292.36 | $51,575.56 |
| FRI | 05/05/17 | | John | -$623.50 | $50,952.06 |
| FRI | 05/05/17 | | Sandy | -$4,601.35 | $46,350.71 |
| FRI | 05/05/17 | | Gayle | -$1,792.69 | $44,558.02 |
| FRI | 05/05/17 | | Julie | -$1,375.37 | $43,182.65 |
| FRI | 05/05/17 | | Tim | -$1,368.22 | $41,814.43 |

# Checkbook Register
## Plasco Corporation
For Bank Code: PNC
Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17
**Time:** 02:09:49 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| FRI | 05/05/17 | | Tony | -$2,180.94 | $39,633.49 |
| FRI | 05/05/17 | | Phil | -$3,550.68 | $36,082.81 |
| FRI | 05/05/17 | | Derek | -$3,823.75 | $32,259.06 |
| FRI | 05/05/17 | | Joe Noe | -$2,633.27 | $29,625.79 |
| FRI | 05/05/17 | | Dan | -$2,595.75 | $27,030.04 |
| FRI | 05/05/17 | | Ken B | -$1,381.55 | $25,648.49 |
| FRI | 05/05/17 | | Carlos | -$1,645.24 | $24,003.25 |
| FRI | 05/05/17 | | Alex | -$1,219.57 | $22,783.68 |
| FRI | 05/05/17 | | Ron | -$1,562.56 | $21,221.12 |
| FRI | 05/05/17 | | Jose | -$1,749.39 | $19,471.73 |
| FRI | 05/05/17 | | Brandon | -$1,250.12 | $18,221.61 |
| FRI | 05/05/17 | | Daryl | -$3,023.82 | $15,197.79 |
| FRI | 05/05/17 | | Matt | -$1,250.12 | $13,947.67 |
| FRI | 05/05/17 | | Sean | -$1,842.35 | $12,105.32 |
| FRI | 05/05/17 | | Tony | -$1,766.63 | $10,338.69 |
| FRI | 05/05/17 | | Grady | -$2,375.84 | $7,962.85 |
| FRI | 05/05/17 | | James | -$1,407.42 | $6,555.43 |
| FRI | 05/05/17 | | Bob Patton | -$2,252.71 | $4,302.72 |
| FRI | 05/05/17 | | Bob Singleton | -$2,171.52 | $2,131.20 |
| FRI | 05/05/17 | | Bryan | -$417.19 | $1,714.01 |
| FRI | 05/05/17 | | Jose E | -$548.73 | $1,165.28 |
| FRI | 05/05/17 | | Mark F | -$451.29 | $713.99 |
| FRI | 05/05/17 | | Mark | -$1,224.55 | -$510.56 |
| FRI | 05/05/17 | | Kenn Turrell | -$1,899.34 | -$2,409.90 |
| FRI | 05/05/17 | | John V | -$1,507.17 | -$3,917.07 |
| FRI | 05/05/17 | | Chris | -$3,184.12 | -$7,101.19 |
| FRI | 05/05/17 | | Kyle | -$994.07 | -$8,095.26 |
| FRI | 05/05/17 | | Sam | -$2,398.38 | -$10,493.64 |
| FRI | 05/05/17 | | Glenn Hempel | -$854.45 | -$11,348.09 |
| FRI | 05/05/17 | | Nationwide | -$2,873.10 | -$14,221.19 |
| FRI | 05/05/17 | | 2447 | -$387.56 | -$14,608.75 |
| MON | 05/08/17 | | Transfer from formulating | $200.00 | -$14,408.75 |
| MON | 05/08/17 | | Transfer to PNC | $3,300.00 | -$11,108.75 |
| THU | 05/11/17 | | Trasnfer to FSB | -$600.00 | -$11,708.75 |
| THU | 05/11/17 | | Sandy Loan | $5,000.00 | -$6,708.75 |
| TUE | 05/16/17 | | Deposit | $20,920.00 | $14,211.25 |
| TUE | 05/16/17 | 5117 | Mac Mold Base | -$14,442.03 | -$230.78 |
| WED | 05/17/17 | 2449 | TFB Plastics Inc | -$2,000.00 | -$2,230.78 |
| WED | 05/17/17 | 2450 | Gladys Ellgass | -$200.00 | -$2,430.78 |
| THU | 05/18/17 | 051817 | AFLAC | -$880.68 | -$3,311.46 |
| THU | 05/18/17 | 2451 | Apelott Industrial Sales | -$431.00 | -$3,742.46 |
| THU | 05/18/17 | 2452 | TFB Plastics Inc | -$414.00 | -$4,156.46 |
| THU | 05/18/17 | 51918 | Bank Of America | -$720.00 | -$4,876.46 |
| FRI | 05/19/17 | | Nichole phone payment | $44.43 | -$4,832.03 |
| FRI | 05/19/17 | | 14947 | -$623.50 | -$5,455.53 |
| FRI | 05/19/17 | | 14948 | -$4,601.35 | -$10,056.88 |
| FRI | 05/19/17 | | 14949 | -$586.72 | -$10,643.60 |
| FRI | 05/19/17 | | 14950 | -$1,281.65 | -$11,925.25 |
| FRI | 05/19/17 | | 14951 | -$1,166.51 | -$13,091.76 |
| FRI | 05/19/17 | | 14952 | -$2,544.99 | -$15,636.75 |

# Checkbook Register
## Plasco Corporation
For Bank Code:  PNC
Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17
**Time:** 02:09:49 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| FRI | 05/19/17 | | 14953 | -$3,823.75 | -$19,460.50 |
| FRI | 05/19/17 | | 14954 | -$2,525.60 | -$21,986.10 |
| FRI | 05/19/17 | | 14955 | -$2,520.27 | -$24,506.37 |
| FRI | 05/19/17 | | 14956 | -$1,105.43 | -$25,611.80 |
| FRI | 05/19/17 | | 14957 | -$1,407.54 | -$27,019.34 |
| FRI | 05/19/17 | | 14958 | -$1,008.53 | -$28,027.87 |
| FRI | 05/19/17 | | 14959 | -$1,413.48 | -$29,441.35 |
| FRI | 05/19/17 | | 14960 | -$1,749.39 | -$31,190.74 |
| FRI | 05/19/17 | | 14961 | -$2,087.83 | -$33,278.57 |
| FRI | 05/19/17 | | 14962 | -$791.75 | -$34,070.32 |
| FRI | 05/19/17 | | 14963 | -$1,227.22 | -$35,297.54 |
| FRI | 05/19/17 | | 14964 | -$1,450.98 | -$36,748.52 |
| FRI | 05/19/17 | | 14965 | -$1,557.50 | -$38,306.02 |
| FRI | 05/19/17 | | 14981 | -$1,006.28 | -$39,312.30 |
| FRI | 05/19/17 | | 14967 | -$1,354.26 | -$40,666.56 |
| FRI | 05/19/17 | | 14968 | -$899.57 | -$41,566.13 |
| FRI | 05/19/17 | | 14969 | -$180.28 | -$41,746.41 |
| FRI | 05/19/17 | | 14970 | -$152.08 | -$41,898.49 |
| FRI | 05/19/17 | | 14971 | -$1,305.63 | -$43,204.12 |
| FRI | 05/19/17 | | 14972 | -$1,300.63 | -$44,504.75 |
| FRI | 05/19/17 | | 14973 | -$1,832.52 | -$46,337.27 |
| FRI | 05/19/17 | | 14974 | -$3,184.12 | -$49,521.39 |
| FRI | 05/19/17 | | 14975 | -$1,045.51 | -$50,566.90 |
| FRI | 05/19/17 | | 14976 | -$2,398.38 | -$52,965.28 |
| FRI | 05/19/17 | | 14977 | -$240.11 | -$53,205.39 |
| FRI | 05/19/17 | | 14978 | -$92.30 | -$53,297.69 |
| FRI | 05/19/17 | | 14979 | -$149.20 | -$53,446.89 |
| FRI | 05/19/17 | | 2457 | -$21.15 | -$53,468.04 |
| FRI | 05/19/17 | | 2459 | -$63.43 | -$53,531.47 |
| FRI | 05/19/17 | | 2456 | -$42.29 | -$53,573.76 |
| FRI | 05/19/17 | | 2455 | -$42.29 | -$53,616.05 |
| FRI | 05/19/17 | | 2454 | -$110.82 | -$53,726.87 |
| FRI | 05/19/17 | | 14994 | -$2,564.96 | -$56,291.83 |
| FRI | 05/19/17 | | Sandy Payroll Loan | $44,000.00 | -$12,291.83 |
| FRI | 05/19/17 | | Deposit | $2,500.00 | -$9,791.83 |
| FRI | 05/19/17 | 051917 | Semco Energy Gas | -$698.93 | -$10,490.76 |
| FRI | 05/19/17 | 051920 | ADP Run | -$7.00 | -$10,497.76 |
| FRI | 05/19/17 | 14980 | DCS Waterjet Services | -$1,496.00 | -$11,993.76 |
| FRI | 05/19/17 | 14981 | James Krajenta | -$1,006.28 | -$13,000.04 |
| FRI | 05/19/17 | 51917 | Semco Energy Gas Company | -$458.42 | -$13,458.46 |
| FRI | 05/19/17 | 51919 | Bank Of America-Corporate | -$600.00 | -$14,058.46 |
| MON | 05/22/17 | 14982 | Advanced Polymers Composite | -$3,894.00 | -$17,952.46 |
| MON | 05/22/17 | 2453 | Home Depot | -$473.50 | -$18,425.96 |
| TUE | 05/23/17 | 2454 | Clinton Aluminum | -$1,240.00 | -$19,665.96 |
| TUE | 05/23/17 | 2462 | Apelott Industrial Sales | -$612.00 | -$20,277.96 |
| TUE | 05/23/17 | 2463 | Metal Mart | -$459.80 | -$20,737.76 |
| TUE | 05/23/17 | 2464 | Apelott Industrial Sales | -$19.80 | -$20,757.56 |
| WED | 05/24/17 | 14984 | *** VOID *** Accurate Welding | $0.00 | -$20,757.56 |
| WED | 05/24/17 | 2458 | Gladys Ellgass | -$500.00 | -$21,257.56 |
| THU | 05/25/17 | | Transfer to PNC | $10,000.00 | -$11,257.56 |

# Checkbook Register
## Plasco Corporation
For Bank Code:  PNC

Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17

**Time:** 02:09:49 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| THU | 05/25/17 | 052517 | Ascentium Capital | -$1,931.11 | -$13,188.67 |
| THU | 05/25/17 | 14985 | JP Precision Inc | -$2,000.00 | -$15,188.67 |
| THU | 05/25/17 | 14986 | SRPS | -$95.48 | -$15,284.15 |
| THU | 05/25/17 | 14987 | Orchardview Physicians | -$495.00 | -$15,779.15 |
| THU | 05/25/17 | 14988 | De Lage Landen Financial | -$1,186.27 | -$16,965.42 |
| THU | 05/25/17 | 493705663 | ADP EZ Labor MGR | -$51.75 | -$17,017.17 |
| FRI | 05/26/17 | | Deposit | $6,450.00 | -$10,567.17 |
| FRI | 05/26/17 | 052617 | Comcast | -$203.53 | -$10,770.70 |
| FRI | 05/26/17 | 14989 | Sam Morici | -$1,774.62 | -$12,545.32 |
| FRI | 05/26/17 | 14990 | Tony Lasala | -$1,586.70 | -$14,132.02 |
| FRI | 05/26/17 | 14991 | Nationwide Pension Services | -$425.00 | -$14,557.02 |
| FRI | 05/26/17 | 14992 | Sandra Zuccarini | -$44,000.00 | -$58,557.02 |
| FRI | 05/26/17 | 14995 | Village Of Romeo | -$525.51 | -$59,082.53 |
| FRI | 05/26/17 | 52617 | Humana Dental Insurance | -$1,751.19 | -$60,833.72 |
| TUE | 05/30/17 | | Deposit | $36,637.00 | -$24,196.72 |
| TUE | 05/30/17 | 053017 | Marathon Petroleum Company | -$932.60 | -$25,129.32 |
| TUE | 05/30/17 | 14996 | Petty Cash | -$998.35 | -$26,127.67 |
| TUE | 05/30/17 | 2465 | Apelott Industrial Sales | -$1,732.88 | -$27,860.55 |
| TUE | 05/30/17 | 2466 | Apelott Industrial Sales | -$3,835.52 | -$31,696.07 |
| TUE | 05/30/17 | 2467 | Apelott Industrial Sales | -$111.80 | -$31,807.87 |
| WED | 05/31/17 | | Bank charge | $128.00 | -$31,679.87 |
| WED | 05/31/17 | | | -$6.52 | -$31,686.39 |
| WED | 05/31/17 | | Transfer to FSB | -$10,000.00 | -$41,686.39 |
| WED | 05/31/17 | 15027 | | -$623.50 | -$42,309.89 |
| WED | 05/31/17 | 15028 | | -$4,601.35 | -$46,911.24 |
| WED | 05/31/17 | 14999 | | -$370.94 | -$47,282.18 |
| WED | 05/31/17 | 15000 | | -$1,369.51 | -$48,651.69 |
| WED | 05/31/17 | 15001 | | -$1,230.85 | -$49,882.54 |
| WED | 05/31/17 | 15002 | | -$2,544.99 | -$52,427.53 |
| WED | 05/31/17 | 15003 | | -$1,314.14 | -$53,741.67 |
| WED | 05/31/17 | 15004 | | -$2,449.19 | -$56,190.86 |
| WED | 05/31/17 | 15005 | | -$2,322.67 | -$58,513.53 |
| WED | 05/31/17 | 15006 | | -$1,266.76 | -$59,780.29 |
| WED | 05/31/17 | 0 | | $.00 | -$59,780.29 |
| WED | 05/31/17 | 15008 | | -$929.22 | -$60,709.51 |
| WED | 05/31/17 | 15009 | | -$1,353.86 | -$62,063.37 |
| WED | 05/31/17 | 15010 | | -$1,749.39 | -$63,812.76 |
| WED | 05/31/17 | 15011 | | -$1,976.73 | -$65,789.49 |
| WED | 05/31/17 | 15012 | | -$861.61 | -$66,651.10 |
| WED | 05/31/17 | 15013 | | -$1,191.04 | -$67,842.14 |
| WED | 05/31/17 | 15014 | | -$1,666.71 | -$69,508.85 |
| WED | 05/31/17 | 15015 | | -$1,320.88 | -$70,829.73 |
| WED | 05/31/17 | 15016 | | -$1,177.52 | -$72,007.25 |
| WED | 05/31/17 | 15017 | | -$1,292.60 | -$73,299.85 |
| WED | 05/31/17 | 15018 | | -$1,163.87 | -$74,463.72 |
| WED | 05/31/17 | 15019 | | -$1,417.83 | -$75,881.55 |
| WED | 05/31/17 | 15020 | | -$878.27 | -$76,759.82 |
| WED | 05/31/17 | 15021 | | -$322.39 | -$77,082.21 |
| WED | 05/31/17 | 15022 | | -$1,376.07 | -$78,458.28 |
| WED | 05/31/17 | 15023 | | -$1,484.21 | -$79,942.49 |

# Checkbook Register

## Plasco Corporation

For Bank Code: PNC

Transactions Dated 04/01/17 through 06/29/17

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| WED | 05/31/17 | | 15024 | -$3,184.12 | -$83,126.61 |
| WED | 05/31/17 | | 15025 | -$856.18 | -$83,982.79 |
| WED | 05/31/17 | | 15026 | -$2,398.38 | -$86,381.17 |
| WED | 05/31/17 | | Bette MISDU | -$74.60 | -$86,455.77 |
| WED | 05/31/17 | | Carlos Tesas | -$46.15 | -$86,501.92 |
| WED | 05/31/17 | | Nationwide | -$2,498.26 | -$89,000.18 |
| WED | 05/31/17 | | Hollins 15060 | -$46.15 | -$89,046.33 |
| WED | 05/31/17 | | Bette 15059 | -$74.60 | -$89,120.93 |
| WED | 05/31/17 | | 2476 | -$243.15 | -$89,364.08 |
| WED | 05/31/17 | | Nationwide 15070 | -$2,498.26 | -$91,862.34 |
| WED | 05/31/17 | 2468 | Gladys Ellgass | -$200.00 | -$92,062.34 |
| THU | 06/01/17 | | Transfer from PNC | -$4,000.00 | -$96,062.34 |
| THU | 06/01/17 | 15029 | Blue Care Network | -$16,740.48 | -$112,802.82 |
| THU | 06/01/17 | 15030 | *** VOID *** Rolled Alloys | $.00 | -$112,802.82 |
| THU | 06/01/17 | 15031 | Macomb Welding & Assembly Inc | -$1,282.50 | -$114,085.32 |
| THU | 06/01/17 | 15032 | JP Precision Inc | -$2,000.00 | -$116,085.32 |
| THU | 06/01/17 | 15033 | Merrill Tool | -$4,656.33 | -$120,741.65 |
| THU | 06/01/17 | 15034 | Rolled Alloys | -$5,784.00 | -$126,525.65 |
| THU | 06/01/17 | 2472 | Clinton Aluminum | -$272.62 | -$126,798.27 |
| FRI | 06/02/17 | | Transfer from PNC | -$31,000.00 | -$157,798.27 |
| FRI | 06/02/17 | | Deposit | $219,160.00 | $61,361.73 |
| FRI | 06/02/17 | 060217 | Secura Insurance Company | -$7,303.77 | $54,057.96 |
| FRI | 06/02/17 | 15001 | *** VOID *** Timothy Brath | $.00 | $54,057.96 |
| FRI | 06/02/17 | 15035 | PNC Corporate Card | -$1,500.00 | $52,557.96 |
| FRI | 06/02/17 | 15036 | Advanced Polymers Composite | -$11,682.00 | $40,875.96 |
| FRI | 06/02/17 | 15037 | Aladdin Machining | -$11,510.00 | $29,365.96 |
| FRI | 06/02/17 | 15038 | *** VOID *** Re-Steel | $.00 | $29,365.96 |
| FRI | 06/02/17 | 15039 | Re-Steel | -$5,000.00 | $24,365.96 |
| FRI | 06/02/17 | 15040 | Ric Ransom | -$7,525.00 | $16,840.96 |
| FRI | 06/02/17 | 2475 | Apelott Industrial Sales | -$6,739.60 | $10,101.36 |
| FRI | 06/02/17 | 6217 | American Express | -$555.00 | $9,546.36 |
| FRI | 06/02/17 | 6217-1 | American Express | -$520.00 | $9,026.36 |
| FRI | 06/02/17 | EFT6/2 | Waste Management | -$1,563.41 | $7,462.95 |
| FRI | 06/02/17 | MAY17-1 | Card Member Services | -$1,500.00 | $5,962.95 |
| MON | 06/05/17 | 060517 | Verizon Wireless | -$600.00 | $5,362.95 |
| MON | 06/05/17 | 15041 | Blue Water Air Compressor | -$1,479.35 | $3,883.60 |
| MON | 06/05/17 | 15042 | Inspec Inc | -$2,500.00 | $1,383.60 |
| MON | 06/05/17 | 15043 | Quality Business Engraving | -$1,284.10 | $99.50 |
| MON | 06/05/17 | 15044 | Metro Welding Supply Corp | -$2,896.19 | -$2,796.69 |
| MON | 06/05/17 | 2471 | Apelott Industrial Sales | -$756.72 | -$3,553.41 |
| MON | 06/05/17 | 2473 | TFB Plastics Inc | -$276.00 | -$3,829.41 |
| MON | 06/05/17 | 6517 | AFLAC | -$386.94 | -$4,216.35 |
| TUE | 06/06/17 | | Transfer to PNC | $50,000.00 | $45,783.65 |
| TUE | 06/06/17 | | Deposit | $10,876.00 | $56,659.65 |
| TUE | 06/06/17 | 15045 | First Choice Coffee Services | -$84.80 | $56,574.85 |
| TUE | 06/06/17 | 15046 | Arkay Walker | -$911.40 | $55,663.45 |
| TUE | 06/06/17 | 15047 | Sam Morici | -$492.50 | $55,170.95 |
| TUE | 06/06/17 | 15048 | Pitney Bowes (Rental) | -$422.94 | $54,748.01 |
| TUE | 06/06/17 | 15049 | Governor Buisness Solutions | -$327.20 | $54,420.81 |
| TUE | 06/06/17 | 15050 | *** VOID *** O.S.C. | $.00 | $54,420.81 |

# Checkbook Register
## Plasco Corporation
### For Bank Code: PNC
Transactions Dated 04/01/17 through 06/29/17

**Date:** 10/17/17
**Time:** 02:09:49 pm

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| TUE | 06/06/17 | 15051 | Thumb Alarm Systems Inc | -$24.95 | $54,395.86 |
| TUE | 06/06/17 | 15052 | O.S.C. | -$1,226.66 | $53,169.20 |
| TUE | 06/06/17 | 15053 | Orkin Pest Control | -$274.06 | $52,895.14 |
| TUE | 06/06/17 | 15054 | Texas Workforce Commission Tax | -$883.01 | $52,012.13 |
| TUE | 06/06/17 | 15055 | The Village Florist | -$106.00 | $51,906.13 |
| TUE | 06/06/17 | 15056 | *** VOID *** Arrow Uniform-Tay | $.00 | $51,906.13 |
| TUE | 06/06/17 | 15057 | *** VOID *** Pyro Service Comp | $.00 | $51,906.13 |
| TUE | 06/06/17 | 15058 | ITU Absorbtech | -$324.84 | $51,581.29 |
| TUE | 06/06/17 | 2477 | Apelott Industrial Sales | -$108.79 | $51,472.50 |
| THU | 06/08/17 | 6/17 | Bank Of America-Corporate | -$600.00 | $50,872.50 |
| FRI | 06/09/17 | 15061 | AHB Tooling& Machinery | -$500.00 | $50,372.50 |
| FRI | 06/09/17 | 15062 | Macomb Welding & Assembly Inc | -$1,282.50 | $49,090.00 |
| FRI | 06/09/17 | 15109 | *** VOID *** MISDU 910828576 B | $.00 | $49,090.00 |
| TUE | 06/13/17 | 15063 | Advanced Polymers Composite | -$3,894.00 | $45,196.00 |
| TUE | 06/13/17 | 2478 | Apelott Industrial Sales | -$1,165.26 | $44,030.74 |
| TUE | 06/13/17 | 61318 | DTE Energy-173 | -$1,185.03 | $42,845.71 |
| WED | 06/14/17 | | 15071 | -$623.50 | $42,222.21 |
| WED | 06/14/17 | | 15072 | -$4,601.35 | $37,620.86 |
| WED | 06/14/17 | | 15073 | -$305.16 | $37,315.70 |
| WED | 06/14/17 | | 15074 | -$1,310.94 | $36,004.76 |
| WED | 06/14/17 | | 15075 | -$1,251.60 | $34,753.16 |
| WED | 06/14/17 | | 15076 | -$3,130.11 | $31,623.05 |
| WED | 06/14/17 | | 15077 | -$3,146.74 | $28,476.31 |
| WED | 06/14/17 | | 15078 | -$312.48 | $28,163.83 |
| WED | 06/14/17 | | 15079 | -$2,155.73 | $26,008.10 |
| WED | 06/14/17 | | 15080 | -$1,519.49 | $24,488.61 |
| WED | 06/14/17 | | 15081 | -$1,616.12 | $22,872.49 |
| WED | 06/14/17 | | 15082 | -$1,328.89 | $21,543.60 |
| WED | 06/14/17 | | 15083 | -$1,718.26 | $19,825.34 |
| WED | 06/14/17 | | 2481 | -$82.65 | $19,742.69 |
| WED | 06/14/17 | | 15084 | -$1,859.60 | $17,883.09 |
| WED | 06/14/17 | | 15085 | -$2,102.45 | $15,780.64 |
| WED | 06/14/17 | | 15086 | -$996.45 | $14,784.19 |
| WED | 06/14/17 | | 15087 | -$1,138.41 | $13,645.78 |
| WED | 06/14/17 | | 15088 | -$1,318.22 | $12,327.56 |
| WED | 06/14/17 | | 15089 | -$1,350.46 | $10,977.10 |
| WED | 06/14/17 | | 15090 | -$374.96 | $10,602.14 |
| WED | 06/14/17 | | 15091 | -$1,354.26 | $9,247.88 |
| WED | 06/14/17 | | 15092 | -$899.57 | $8,348.31 |
| WED | 06/14/17 | | 15093 | -$1,640.97 | $6,707.34 |
| WED | 06/14/17 | | 15094 | -$2,547.27 | $4,160.07 |
| WED | 06/14/17 | | 15095 | -$2,182.21 | $1,977.86 |
| WED | 06/14/17 | | 15096 | -$1,992.24 | -$14.38 |
| WED | 06/14/17 | | 15097 | -$3,184.12 | -$3,198.50 |
| WED | 06/14/17 | | 15098 | -$957.10 | -$4,155.60 |
| WED | 06/14/17 | | 2398.38 | -$2,398.38 | -$6,553.98 |
| WED | 06/14/17 | | | $.00 | -$6,553.98 |
| THU | 06/15/17 | | Deposit | $111,318.00 | $104,764.02 |
| THU | 06/15/17 | 061517 | PNC Corporate Card | -$1,500.00 | $103,264.02 |
| THU | 06/15/17 | 15064 | Richard Shafer | -$18,669.00 | $84,595.02 |

# Checkbook Register

## Plasco Corporation

For Bank Code:  PNC
Transactions Dated 04/01/17 through 06/29/17

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| THU | 06/15/17 | 15065 | Supra Alloys | -$2,688.00 | $81,907.02 |
| THU | 06/15/17 | 15066 | Advanced Polymers Composite | -$632.00 | $81,275.02 |
| THU | 06/15/17 | 15067 | Ronald B Rich Trust | -$536.00 | $80,739.02 |
| THU | 06/15/17 | 15068 | Pacific Coast Composites | -$14,492.93 | $66,246.09 |
| THU | 06/15/17 | 15069 | TFB Plastics Inc | -$3,612.05 | $62,634.04 |
| THU | 06/15/17 | 2479 | Apelott Industrial Sales | -$286.88 | $62,347.16 |
| THU | 06/15/17 | 2480 | Apelott Industrial Sales | -$305.34 | $62,041.82 |
| THU | 06/15/17 | 62217 | *** VOID *** Mac Mold Base | $.00 | $62,041.82 |
| FRI | 06/16/17 | 060617 | American Express-Delta | -$82.22 | $61,959.60 |
| FRI | 06/16/17 | 15100 | A&M Fabrication and Welding | -$2,400.00 | $59,559.60 |
| FRI | 06/16/17 | 15101 | JoseValencia | -$275.00 | $59,284.60 |
| FRI | 06/16/17 | 61617 | Bank Of America | -$702.00 | $58,582.60 |
| MON | 06/19/17 | 2482 | Apelott Industrial Sales | -$290.36 | $58,292.24 |
| WED | 06/21/17 | 15102 | *** VOID *** Michael J. Nicker | $.00 | $58,292.24 |
| WED | 06/21/17 | 15103 | Margaret Green | -$5,460.00 | $52,832.24 |
| WED | 06/21/17 | 15104 | PC Shards LLC | -$1,669.00 | $51,163.24 |
| WED | 06/21/17 | 2483 | Apelott Industrial Sales | -$3,820.59 | $47,342.65 |
| WED | 06/21/17 | 2484 | Apelott Industrial Sales | -$91.40 | $47,251.25 |
| THU | 06/22/17 | | Deposit | $6,236.00 | $53,487.25 |
| THU | 06/22/17 | 2485 | Gladys Ellgass | -$500.00 | $52,987.25 |
| FRI | 06/23/17 | 15105 | Siciliano Mychalowych VanDusen | -$450.00 | $52,537.25 |
| FRI | 06/23/17 | 2486 | Apelott Industrial Sales | -$254.39 | $52,282.86 |
| MON | 06/26/17 | 15106 | Sam Morici | -$246.27 | $52,036.59 |
| MON | 06/26/17 | 15107 | *** VOID *** Harness, Dickey & | $.00 | $52,036.59 |
| MON | 06/26/17 | 15108 | Tony Lasala | -$1,917.81 | $50,118.78 |
| MON | 06/26/17 | 15110 | *** VOID *** SDU-454062732-HOL | $.00 | $50,118.78 |
| WED | 06/28/17 | 2487 | *** VOID *** Apelott Industria | $.00 | $50,118.78 |
| WED | 06/28/17 | 2488 | Gladys Ellgass | -$200.00 | $49,918.78 |
| WED | 06/28/17 | 2489 | *** VOID *** Apelott Industria | $.00 | $49,918.78 |
| THU | 06/29/17 | | Deposit | $282.37 | $50,201.15 |
| THU | 06/29/17 | | Derek & Phil Cobra | $2,262.35 | $52,463.50 |
| THU | 06/29/17 | | 01553198 | -$1,398.79 | $51,064.71 |
| THU | 06/29/17 | | 01553200 | -$1,513.24 | $49,551.47 |
| THU | 06/29/17 | | 01553220 | -$1,231.16 | $48,320.31 |
| THU | 06/29/17 | | 01553201 | -$3,018.92 | $45,301.39 |
| THU | 06/29/17 | | 01553202 | -$1,430.83 | $43,870.56 |
| THU | 06/29/17 | | 01553203 | -$1,514.27 | $42,356.29 |
| THU | 06/29/17 | | 01553204 | -$1,035.94 | $41,320.35 |
| THU | 06/29/17 | | 01553205 | -$1,542.68 | $39,777.67 |
| THU | 06/29/17 | | 01553207 | -$1,226.69 | $38,550.98 |
| THU | 06/29/17 | | 01553208 | -$2,008.89 | $36,542.09 |
| THU | 06/29/17 | | 01553209 | -$1,043.07 | $35,499.02 |
| THU | 06/29/17 | | 01553211 | -$1,034.58 | $34,464.44 |
| THU | 06/29/17 | | 01553212 | -$1,372.14 | $33,092.30 |
| THU | 06/29/17 | | 01553219 | -$1,360.44 | $31,731.86 |
| THU | 06/29/17 | | 01553218 | -$486.61 | $31,245.25 |
| THU | 06/29/17 | | 01553217 | -$1,826.02 | $29,419.23 |
| THU | 06/29/17 | | 01553216 | -$1,769.15 | $27,650.08 |
| THU | 06/29/17 | | 01553215 | -$2,444.27 | $25,205.81 |
| THU | 06/29/17 | | 01553213 | -$2,128.32 | $23,077.49 |

17-49638-mar    Doc 160    Filed 11/22/17    Entered 11/22/17 12:31:57    Page 50 of 55

## Plasco Corporation

For Bank Code:  PNC

Transactions Dated 04/01/17 through 06/29/17

| Day | Date | Check No | Transaction | Amount | Balance |
|-----|------|----------|-------------|--------|---------|
| THU | 06/29/17 | | 01553214 | -$1,206.03 | $21,871.46 |
| THU | 06/29/17 | | 01553206 | -$1,859.60 | $20,011.86 |
| THU | 06/29/17 | | 01553210 | -$1,046.29 | $18,965.57 |
| THU | 06/29/17 | 01553225 | John Laudermilk | -$2,220.00 | $16,745.57 |

# EXHIBIT B

## to Debtor's Disclosure Statement

## HISTORICAL FINANCIAL INFORMATION

**Summary of Historical Financials –**
**Exhibit B to**
**Debtor's Combined Plan of Liquidation and Disclosure Statement**
**Plasco Tooling and Engineering Corporation**
**Case No. 17-49638-mar (Bankr. E.D. Mich.)**

## 2013 (from Federal Tax Returns)

Gross Receipts:                     $9,078,446

Business Income (Loss):         $955,339

## 2014 (from Federal Tax Returns)

Gross Receipts:                     $7,921,090

Business Income (Loss):         $417,148

## 2015 (from Federal Tax Returns)

Gross Receipts:                     $7,734,191

Business Income (Loss)          ($2,042,250)

## 2016 (from Unaudited Financial Statements)

Sale Revenue:                       $5,970,694.15

Net Profit (Loss)                   ($834,564.15)

# EXHIBIT C

## to Debtor's Disclosure Statement


# SUMMARY OF POST-PETITION FINANCIAL PERFORMANCE

**Summary of Post-petition Financials –**
**Exhibit C to**
**Debtor's Combined Plan of Liquidation and Disclosure Statement**
**Plasco Tooling and Engineering Corporation**
**Case No. 17-49638-mar (Bankr. E.D. Mich.)**

|  | June (1 day) | July | August | September |
|---|---|---|---|---|
| Cash at end of month | 17,234.18 | 23,946.66 | 157,303.60[1] | 354,940.51 |
| Total Disbursements | 0.00 | 138,355.21 | 238,934.06 | 2,558,960.60 |
| Total Revenue/Sales | 0.00 | 145,429.11 | 405,899.66 | 219,595.96 |
| Total Expenses[2] | 0.00 | 221,033.59 | 468,624.24 | 258,749.06 |
| Net Income (Loss): | 0.00 | (10,451.93) | (62,734.59) | (39,153.10) |

From Debtor's Monthly Operating Reports

---

[1] Includes distribution to First State Bank as partial payment of its Secured Claim.
[2] Includes both Cost of Goods Sold and Expenses on the Operating Statement (P&L).